## Quincy Ornamental Iron Works, Inc. *vs.* Fred J. Findlen & others.[1]

Suffolk.   May 3, 1967. — June 30, 1967.

Present: Wilkins, C.J., Spalding, Kirk, Spiegel, & Reardon, JJ.

*Public Works.   Contract,* For public works, Bidding for contract.   *Equity Jurisdiction,* Declaratory relief.   *Equity Pleading and Practice,* Parties.   *Administrative Matter.*

A subbidder for certain work on a public construction project subject to
G. L. c. 149, §§ 44A–44L, had standing to bring a suit in equity chal-
lenging the validity of an award of the subcontract for that work to the
successful general bidder, who had submitted a subbid therefor, where
the plaintiff had a right to be considered as a subbidder under the sub-
stitution requirements of the statute in the event the award was de-
clared invalid, even though he could not show that "but for the illegal
action of the awarding authority . . . [he] would have received the
contract for which" he bid [87–88]; and the plaintiff had a sufficient
propriety interest to justify injunctive relief.   [90]

The awarding authority on a public construction project should not have
considered a subbid for certain work submitted by a general bidder
whom the authority had not investigated in order to determine to its
"satisfaction," as required by G. L. c. 149, § 44J, that he customarily
performed such work with his own employees and was qualified to do
work of that character, and an award of the subcontract for such work
to the general bidder was invalid.   [88]

Where an awarding authority on a public construction project had not
undertaken to determine to its "satisfaction," as required by G. L.
c. 149, §§ 44J, that the successful general bidder, who submitted a sub-
bid for certain work, customarily performed such work with his own
employees and was qualified to do work of that character, but neverthe-
less the authority awarded the subcontract for such work to the general
bidder, and another subbidder therefor brought a suit in equity to have
the subcontract declared invalid, the trial judge was not empowered to
find, as he did, the facts with respect to the general bidder's customary
performance of and qualifications to do such work, but only to review
the decision of the authority, and the final decree, declaring that the
general bidder did not have "the legal right to perform the sub-trade"

---

[1] Joseph E. Findlen, Robert A. Findlen, Fred P. Findlen, and John J. Power,
doing business as Fred J. Findlen & Sons, and Medford Housing Authority.

for which the subcontract was awarded, was ordered modified by the elimination of such facts found by the judge, and as so modified was affirmed. [89–90]

BILL IN EQUITY filed in the Superior Court on July 6, 1966.

The suit was heard by *Mitchell*, J.

*Frederick W. Roche* (*Robert J. Sherer* with him) for the defendants.

*Joseph M. Corwin* (*Sally A. Corwin* with him) for the plaintiff.

SPIEGEL, J.   This is a bill for declaratory relief seeking to have declared invalid the awarding of a certain subcontract by the Medford Housing Authority (Authority) to Fred J. Findlen & Sons (Findlen), which was also awarded the general contract.   The judge made "Findings, Rulings and Order for Decree."   A final decree was entered declaring, in substance, that Findlen "does not have the legal right to perform the sub-trade" for which the subcontract was awarded.   Findlen was also enjoined from proceeding further with work on the subcontract and from receiving further payments for such work, and the Authority was enjoined from approving the release of any funds to Findlen in connection with the subcontract until Findlen, as general contractor, entered into a new subcontract after compliance by the Authority with G. L. c. 149, §§ 44A–44L.   The defendants appealed from the final decree.[2]   The evidence is reported.

From the findings of the judge it appears that the "Authority invited sealed bids and sub-bids, including sub-bids for the fabrication of structural steel and miscellaneous metal work, for the construction of a housing project in Medford for the elderly . . . , all in accordance with G. L. c. 149, §§ 44A–L."   The plaintiff "seasonably filed a proper sub-bid for the metal work and its price was the lowest.   There were seven other sub-bidders for the structural steel and miscellaneous metal work.   Findlen, who was the selected low general bidder, filed a sub-bid for the metal work and carried . . . [itself] as . . . [its] own

---

[2] The Authority did not prosecute its appeal.

metal work subcontractor. The Authority awarded the
. . . contract to Findlen as the metal work subcontractor.
. . . At the time that the Authority awarded Findlen the
general contract and the metal work subcontract, . . . [the
plaintiff] protested to the Authority that the Findlen sub-
bid for metal work was invalid because Findlen did not cus-
tomarily perform the metal work with its own employees.''

1. The judge ruled that although " [t]here is no compul-
sion for the low general bidder to include a low sub-bid in
its general bid nor can a low sub-bidder compel its inclusion
in a general bid. *East Side Construction Co.* v. *Adams,*
329 Mass. 347. . . . [i]t is apparent . . . that in the event
that the challenged sub-bid of Findlen is declared invalid
. . . [the plaintiff] could be considered as a subbidder un-
der the substitution requirements found in'' G. L. c. 149,
§§ 44H and 44I (3). ''Since . . . [G. L. c. 231A, § 1]
clearly gives . . . [the] Court jurisdiction to make binding
declarations of right, duty, status and other legal relation-
ships in any case in which an actual controversy has arisen,
as long as . . . [the plaintiff] has the potential of being
chosen as a sub-bidder, it has legal standing to challenge
the acceptance by the Authority of the sub-bid which it
covets. A sub-bidder in the position of . . . [the plain-
tiff] has been deprived of the legal right to have his sub-bid
considered and the opportunity to be selected as a sub-
bidder. . . . I therefore find as a matter of law that . . .
[the plaintiff] has standing to bring the subject action.''

It is well established that a bidder on a contract gov-
erned by G. L. c. 149, §§ 44A–44L has standing to challenge
the compliance of the awarding authority with the require-
ments of those sections. See *Grande & Son, Inc.* v. *School
Housing Comm. of No. Reading,* 334 Mass. 252; *Chick's
Constr. Co.* v. *Wachusett Regional High Sch. Dist. Sch.
Comm.* 343 Mass. 38; *Builders Realty Corp. of Mass.* v.
*Newton,* 348 Mass. 64; *J. & J. Elec. Co.* v. *Government
Center Commn.* 349 Mass. 172; *Burgess & Blacher Co.* v.
*Beverly Housing Authy.* 351 Mass. 88. Findlen appears
to contend that the plaintiffs in the above cases had stand-

ing because those cases involved claims that ''but for the illegal action of the awarding authority . . . [the plaintiffs] *would have* received the contract for which . . . [they] bid.'' We do not agree with this interpretation. The plaintiffs had standing in those cases because they had a right to be considered in the event that the subbidder named in the general contract was rejected. There was no error in the judge ruling that the plaintiff ''has standing to bring the subject . . . [suit].''

2. The judge found ''There is no evidence that the Authority ever considered, investigated, passed upon or had any knowledge of whether Findlen customarily performed with its own employees the miscellaneous metal work which was included in its sub-bid.'' General Laws c. 149, § 44J, permits a general bidder to submit a subbid if he ''customarily performs with his own employees'' the subtrade, but states that ''[n]o such sub-bid by a general bidder shall be considered, however, unless the general bidder can show, to the satisfaction of the awarding authority, that he does customarily perform such sub-trade, and is qualified to do the character of work required by the applicable section of the specifications.''

The finding of the judge shows that the Authority did not comply with the requirements of this section, and hence it should not have considered the subbid of the general bidder. Consequently, Findlen could not be the subcontractor for this subtrade. Cf. *Burgess & Blacher Co.* v. *Beverly Housing Authy.* 351 Mass. 88, 89–90.

The judge also found, on the basis of testimony to which the defendants consistently objected, that ''[o]n all the facts . . . Findlen did not customarily perform with its own employees the sub-trade of structural steel and miscellaneous metal work and thus was ineligible to submit a subbid for such work to the Authority.'' Citing *East Side Constr. Co. Inc.* v. *Adams*, 329 Mass. 347, 350, he ruled ''[i]t is clear that as a prerequisite to the submission of a sub-bid by a general bidder, it must customarily perform with its own employees the sub-trade which is the subject of its sub-

bid . . . . This provision alone gives the Court clear authority to make the requisite determination.'' He did not ''reach the question as to the extent of the jurisdiction of . . . [the] Court to review an administrative determination of the Authority'' because he found ''as a matter of fact that the awarding authority . . . in no way considered, investigated or passed upon Findlen's customary performances and, as a consequence, never was in a position to be satisfied in this regard.''

It is true that a general bidder must satisfy the requirements of G. L. c. 149, § 44J, regarding his customary performance of the subtrade with his own employees. But it is equally clear that the statute requires the awarding authority to satisfy itself that the general bidder ''does customarily perform such sub-trade, and is qualified to do the character of work required by the applicable section of the specifications.'' Where, as here, the awarding authority has not satisfied itself in this regard the judge is not empowered to make his own determination of the general bidder's customary practice or qualifications and it was error for him to do so. He can only review the decisions of the Authority in order to determine whether the statutory standards have been met, with due regard to the discretion vested in the Authority by the statute. *Gifford* v. *Commissioner of Pub. Health,* 328 Mass. 608, 616–617. *Grande & Son, Inc.* v. *School Housing Comm. of No. Reading,* 334 Mass. 252, 256. ''It is the general rule that courts of equity will not interfere to decide questions which have been committed by law to the determination of public officers.'' *Mulholland* v. *State Racing Commn.* 295 Mass. 286, 291–292. *Attorney-Gen.* v. *Trustees of Boston Elev. Ry.* 319 Mass. 642, 656–657. See Cooper, State Administrative Law, pp. 562–572; Davis, Administrative Law Treatise, c. 19; Jaffe, Judicial Control of Administrative Action, c. 4. It is the duty of the Authority to determine whether Findlen ''does customarily perform such sub-trade, and is qualified to do the character of work required by the applicable sec-

tion of the specifications." Therefore the decree should not have included the paragraphs set out in the margin.[3]

3. Findlen also argues that injunctive relief was not justified because "there is nothing in the record to show either (a) how the plaintiff derives any benefit from . . . [the] injunction or (b) how the plaintiff would be injured if the injunction had not been granted." We do not agree.

The possibility that the plaintiff, as a subcontractor which seasonably filed a proper subbid, could be awarded the subcontract was sufficient to give it standing to bring this suit and is a sufficient proprietary interest to justify injunctive relief.

The decree is to be modified in accordance with this opinion and as so modified is affirmed.

*So ordered.*

---

[3] "3. Fred J. Findlen, Joseph E. Findlen, Robert A. Findlen, Fred P. Findlen, and John J. Power d/b/a Fred J. Findlen & Sons does not customarily perform with its own employees the sub-trade of structural steel and miscellaneous metal and thus is ineligible to submit a sub-bid for such sub-trade to the Medford Housing Authority.    4.    The sub-bid for the sub-trade of structural steel and miscellaneous metal of Fred J. Findlen, Joseph E. Findlen, Robert A. Findlen, Fred P. Findlen, and John J. Power d/b/a Fred J. Findlen & Sons is invalid and in conflict with the provisions of G. L. c. 149, § 44J because Fred J. Findlen, Joseph E. Findlen, Robert A. Findlen, Fred P. Findlen, and John J. Power d/b/a Fred J. Findlen & Sons does not customarily perform with its own employees the work of that sub-trade and its subcontract for that sub-trade is invalid."