INDUSTRIAL ENGINEERING & METAL FABRICATORS, INC. & another vs. POORVU CONSTRUCTION CO., INC. & another.

Suffolk.    March 7, 1968. — May 7, 1968.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Public Works. Contract,* For public works, Bidding for contract. *Administrative Matter. Equity Jurisdiction,* Declaratory relief. *Equity Pleading and Practice,* Parties.

Subbidders for certain work on a public construction project subject to G. L. c. 149, §§ 44A–44L, had standing to bring a suit in equity against the successful general bidder, who had submitted a subbid for that work, and the director of the awarding authority, challenging the validity of an award of the subcontract for that work to the general bidder. [290]

Evidence in a suit in equity warranted a finding that the awarding authority on a public construction project subject to G. L. c. 149, §§ 44A–44L, made a reasonable investigation in order to determine whether the successful general bidder, who had submitted a subbid for the miscellaneous and ornamental iron work which was the highest subbid therefor, customarily performed such work with his own employees and was qualified to do work of that character, and in the circumstances such investigation, together with other factors which the authority could take into account, formed a proper basis for its determining to its "satisfaction," as required by § 44J, that the general bidder customarily performed and was qualified to do such work, and the authority's decision to award the subcontract therefor to the general bidder was permissible. [291–292]

In a suit in equity by a subbidder for certain work on a public construction project subject to G. L. c. 149, §§ 44A–44L, challenging the validity of an award of the subcontract for that work to the successful general bidder, the judge's function is to review the decision of the awarding authority but not to make his own determination whether, under § 44J, the general bidder customarily performs such work and is qualified to perform it. [292]

BILL IN EQUITY filed in the Superior Court on September 20, 1966.

The suit was heard by *Ponte,* J.

*Joseph M. Corwin (Sally A. Corwin* with him) for the plaintiffs.

*Robert J. Sherer* for Poorvu Construction Co., Inc.

*John M. Rose,* Assistant Attorney General, for the Director of the Bureau of Building Construction.

288                                    354 Mass. 287

Industrial Engineering & Metal Fabricators, Inc. *v.* Poorvu Const. Co. Inc.

CUTTER, J.   Industrial Engineering & Metal Fabricators, Inc. (Industrial) and E. T. Ryan Iron Works, Inc. (Ryan) seek declaratory relief concerning an award to Poorvu Construction Co., Inc. (Poorvu), the low bidder on the general contract, of the miscellaneous and ornamental iron subcontract in connection with the construction of a dormitory at a State college.   The award was made by the Commonwealth's Bureau of Building Construction (the bureau), the director of which, Horace Chase, is also named as a defendant.   Industrial and Ryan say that the award did not comply with G. L. c. 149, § 44J (as amended through St. 1956, c. 679, § 1),[1] because (among other things) they contend (a) that Poorvu does not customarily perform with its own employees the sub-trade of miscellaneous and ornamental iron work (the iron work sub-trade) and is not qualified to do the work required by § 10 of the contract specifications, and (b) that the bureau's approval of Poorvu as subcontractor arbitrarily disregarded c. 149, §§ 44A–44L.

The trial judge made findings, justified by the evidence. On the basis of these findings (except where otherwise indicated) the facts are stated below.   He concluded, inter alia, (a) that "Poorvu as low general bidder customarily performed with . . . [its] own employees the [iron work] subtrade," (b) that "Chase made a reasonable investigation concerning the protests," and (c) that his decision "was made in good faith and in the exercise of his . . . honest judgment" and "was not unreasonable, illegal, arbitrary, capricious, or fraudulent."   He ruled that the plaintiffs

---

[1] Section 44J reads in part, "If a general bidder customarily performs with his own employees any sub-trade or sub-trades listed in Item 2 of the general bid form, he may submit a sub-bid . . . and shall also submit under Item 2 of his general bid his name and amount for such sub-trade.   A sub-bid so submitted by the general bidder selected as the lowest responsible and eligible general bidder shall be considered on a par with sub-bids filed with the awarding authority by sub-bidders who customarily perform such sub-trade.   [A] No such sub-bid by a general bidder shall be considered, however, unless the general bidder can show, [B] *to the satisfaction of the awarding authority,* [C] that he does *customarily* perform such sub-trade, and [D] is qualified to do the character of work required by the applicable section of the specifications" (emphasis supplied).   The letters in brackets are inserted solely for convenient reference to the language immediately following such letters, respectively.

354 Mass. 287                                                                                  289

Industrial Engineering & Metal Fabricators, Inc. v. Poorvu Const. Co. Inc.

have standing to bring this proceeding. A final decree made declarations consistent with the judge's conclusions. The plaintiffs appealed. The evidence is reported.

Poorvu, low general bidder on the project, included its own sub-bid[2] for the iron work. Industrial and Ryan are competent and responsible organizations to do the iron work.

By letter to the bureau, Industrial protested Poorvu's iron work sub-bid. Poorvu, in answer to an inquiry by Chase, mentioned four jobs which Poorvu had done, or was doing, which involved iron work.[3] Poorvu between January 1, 1962, and June 30, 1966, was general contractor on six jobs on which iron work subcontracts were awarded to contractors other than Poorvu, and on which Poorvu had not made an iron work sub-bid. In 1962, Poorvu had submitted an iron work bid on a project but did not get the job.

On August 17, 1966, Joseph G. Surette, a member of Chase's staff, submitted a written opinion to Chase, that Poorvu was "qualified to furnish and install the . . . [iron work] items." Chase discussed Industrial's protest with Surette and two other members of his staff.[4]

The judge also made the general finding that there "is no

---

[2] Industrial submitted the lowest iron work sub-bid. Ryan's was the fifth lowest. Poorvu's was the highest, and was restricted to use by Poorvu itself if selected as general contractor. Poorvu objects to Industrial doing the iron work as its subcontractor.

[3] One was in Montpelier, Vermont, where Poorvu installed miscellaneous ferrous and nonferrous items. On one, Poorvu was general contractor, but installed for its iron work subcontractor iron work furnished by the latter. Although Poorvu was general contractor on two Massachusetts jobs, neither required an iron work sub-bid because the total amount of such work on each project did not exceed $1,000. See c. 149, § 44C (as amended through St. 1964, c. 523).

[4] The comments of one of these two members of Chase's staff indicated that he had some doubt whether Poorvu's performance of iron work was sufficient to show that he "customarily" did this work. The evidence showed that Chase did not make inquiry of the architects or engineers on Poorvu's other jobs but relied principally on his knowledge of two jobs done by Poorvu for the bureau in which the iron work was to cost less than $1,000. Chase did not investigate the percentage of jobs on which Poorvu did the iron work to Poorvu's total jobs, but did have knowledge of Poorvu's ability and experience, as "a qualified, responsible firm." Poorvu conceded that it had no fabricating shop of its own, and that it bought from others certain metal plates, at least partly fabricated materials, and equipment used in the iron work sub-trade.

clear delineation as to what is . . . covered specifically as miscellaneous and ornamental iron works . . . . Great latitude and discretion is left to the individual designer and architect.    Items sometimes included in miscellaneous and ornamental works . . . are at other times included in specifications under some other designation, but still involve the same work and materials . . . covered by miscellaneous and ornamental iron work . . . ."    With respect to Poorvu, he noted "that there is no consistent definition of what 'miscellaneous and ornamental iron work' is, and that on every prior project of which Poorvu was the general contractor . . . [it] had performed with . . . [its] own employees some types of work which are classified at times as miscellaneous and ornamental iron work."

Whether fabrication is necessarily to be regarded as part of the iron work sub-trade is not specifically stated in the statutes (c. 149, §§ 44A–44L, as amended).    This record indicates (a) that the matter also is not clearly determined in departmental guides,[5] and (b) that different sets of specifications may deal with fabrication in different ways, and, on occasion, include various types of metal work in sections of the specifications other than the section relating to miscellaneous and ornamental iron work.    The testimony also indicates that various types of workers, including millwrights, ironworkers, and carpenters, have the necessary skills to do installation of iron work and at least to make adjustments of standard iron work items to meet the needs of particular jobs.

1. The plaintiffs have standing to bring this proceeding. *Quincy Ornamental Iron Works, Inc.* v. *Findlen*, 353 Mass. 85, 87–88, 90 (the *Findlen* case).

---

[5] The bureau's instructions to designers and standard specifications provide only, "Section 10, Miscellaneous and Ornamental Iron.    .1 The following items are to be included in this [s]ection and are to be furnished and installed hereunder: balconies, fences and gates (except chain link), fire escapes, flagpoles, folding gates, grilles (window and door), grille partitions, ladders, pipe railings, metal railings, metal wall rails, steel stairs, ship ladders, thresholds (including aluminum), gymnasium angle base, and louvres (12-ga. or heavier)." Chase testified that this document was "issued as a guide in an advisory way" and had never been "approved as a regulatory document."    The bureau "does at its discretion make deviations from this standard guide."

354 Mass. 287                                                                291

Industrial Engineering & Metal Fabricators, Inc. *v.* Poorvu Const. Co. Inc.

2. Chase, as the bureau's director, after receipt of the protest, in his discretion, made reasonable investigation of the extent to which Poorvu theretofore had been, and currently was, engaged in iron work with its own employees. The extent of his investigation (see fn. 4), so long as reasonable, was a matter for his judgment under the general standards laid down in § 44J. See *Burgess & Blacher Co.* v. *Beverly Housing Authy.* 351 Mass. 88, 89–90. In the absence of an explicit legislative requirement, we would be slow to conclude that the Legislature intended to impose on the bureau's director the substantial administrative burden of any greater investigation than he might deem necessary to satisfy him. This seems to be the type of matter which must be decided rapidly and with some finality in order not to delay the letting of contracts.

As Chase pointed out in his testimony, "historically . . . contractors . . . move into the various trades gradually; in other words, two years ago they might not have done any [iron] work . . . [o]ver a period of time they pick up this phase of the work and they make themselves qualified." We perceive nothing in the statutory requirement (§ 44J, fn. 1, at [C]) that a general bidder "customarily perform such sub-trade," which precludes a general contractor from moving into a sub-trade area, and doing that work as well as other aspects of construction work.

The record shows that Chase had knowledge of Poorvu's general ability, responsibility, and qualifications. He could take into account reasonably the absence of a consistent definition of "miscellaneous and ornamental iron work" and the uncertainties affecting whether and to what extent fabrication is a part of that work. He also had knowledge of construction conditions generally and of what iron work Poorvu in fact had done. There was warrant for the decision that Poorvu was then customarily doing iron work and was qualified to submit an iron work sub-bid (see fn. 1 at [A] and [D]) in June, 1966. The director's decision was permissible, even if, in the somewhat confused circumstances affecting this sub-trade generally and Poorvu

in particular, a different decision perhaps might reasonably have been reached.

The statute (fn. 1, at [B]) leaves the decision "to the satisfaction of the awarding authority." The judgment is to be that of the administrative authority charged with responsibility. As was said in the *Findlen* case, 353 Mass. 85, 89, the judge reviewing the awarding authority's decision "is not empowered to make his own determination of the general bidder's customary practice or qualifications." Nothing in the record suggests to us that Chase misunderstood the issue before him or failed to pass upon it, that he acted arbitrarily, capriciously, or fraudulently, or that he either abused his discretion or lacked information necessary to its exercise.

*Decree affirmed.*