**The Partnership of Brooks BROWN, Curtis M. Payson, Joseph B. Pellicani and Joseph M. Cloutier**

v.

**STATE of Maine, DEPARTMENT OF MANPOWER AFFAIRS, and Douglas Schmidt.**

Supreme Judicial Court of Maine.

Argued Sept. 5, 1980.

Decided March 4, 1981.

Strout, Payson, Pellicani, Cloutier, Hokkanen & Strong, Frederick M. Newcomb, III (orally), Rockland, for plaintiffs.

Patricia McDonough, Asst. Atty. Gen. (orally), Susan P. Herman, Asst. Atty. Gen., Augusta, for Department of Manpower Affairs.

Twitchell, Gray, Linscott & Badger, Richard M. Maraghy, Bangor, for Douglas Schmidt.

Before McKUSICK, C. J., and WERNICK, GODFREY, GLASSMAN and ROBERTS, JJ.

GLASSMAN, Justice.

The plaintiff, the Partnership of Brown, Payson, Pellicani and Cloutier, was the second lowest bidder on a public lease contract awarded by the defendant, the State's Department of Manpower Affairs, to Douglas Schmidt, lowest bidder and "intervenor" in the action below.[1] Alleging that the Department had not complied with Maine's competitive bidding law, the plaintiff filed a petition for review under the Maine Administrative Procedure Act. In a judgment entered on February 15, 1980, the Superior Court, Knox County, dismissed the plaintiff's petition for want of timely filing. We affirm the judgment of the Superior Court.

Twice in the spring and summer of 1979, Maine's Department of Manpower Affairs requested sealed proposals for the rental of office space in Rockland, Maine. *See* 5 M.R.S.A. §§ 1741–49. With each request the Department made available to prospective bidders detailed specifications, reserving the right to reject all bids or to accept the bid believed to be in the State's best interests. The first request was advertised in May, 1979. The bid deadline was in June, and in early July all bidders, including the plaintiff, were notified that no bid had been accepted. Another request for bids was then advertised by the Department, the second bid deadline falling in August, 1979. Douglas Schmidt, three others and the plaintiff submitted timely proposals. The Department determined that only the Schmidt proposal fell within its budgetary constraints and, in letters of rejection dated September 13, it notified the plaintiff and the other three bidders that their bids were too high. Several weeks thereafter, in a letter dated October 3, the Department tentatively accepted Schmidt's bid, pending approval from a related regional office. Finally, on November 15, 1979, the Department wrote a letter to Schmidt that confirmed final approval of his bid and invited him to sign an accompa-

---

1. We describe Douglas Schmidt as "intervenor" because the Superior Court decision referred to a grant of intervenor status to him. The order to that effect neither appears in the record nor is entered on the docket. Schmidt is, therefore, not properly a party to this action. *See* M.R.Civ.P. 79(a). For reasons explained below, that fact is not material to our decision.

nying lease contract, which he did. Forty-two days after November 15, on December 27, 1979, the plaintiff filed its petition for review, claiming that since neither the contract nor Schmidt's bid complied with the Department's specifications the whole purpose of a competitive bidding system was frustrated and the contract was, therefore, void.

The court below did not reach the merits of the plaintiff's claim; as stated, it dismissed the petition for want of timely filing. Essentially, two points are raised in this appeal: (1) the court erred in its interpretation of the applicable time limits of the Maine Administrative Procedure Act and (2) the motion to dismiss was improperly made and entertained.

## I.

■ Before turning to the plaintiff's contentions, we must first resolve a threshold issue that was not addressed by either party. Does the Maine Administrative Procedure Act give the Superior Court, on petition of a disappointed bidder, authority to examine a state agency's actions in accepting a bid and awarding a contract pursuant to a competitive bidding system allegedly abused by the agency? We hold that it does.

Under the Maine APA, the Superior Court is granted jurisdiction to hear petitions for review filed by "any person who is aggrieved by *final agency action. . . .*" 5 M.R.S.A. § 11001(1) (emphasis added). The only pertinent exception is where judicial review is specifically precluded by statute. *Id.* Maine's competitive bidding statute is silent as to the right of judicial review. 5 M.R.S.A. §§ 1741–49 (controlling contracts for public improvement); 5 M.R.S.A. §§ 1811–24 (controlling contracts for services, supplies, materials and equipment). Thus, the issue of whether the APA gives the Superior Court jurisdiction to hear this plaintiff's petition is reduced to the question of whether the state agency decision to award a contract after competitive bidding is "final agency action," subject to the limitations noted below.

■ The APA defines "final agency action" as "a decision by an agency which affects the legal rights, duties or privileges of specific persons, which is dispositive of all issues, legal and factual, and for which no further recourse, appeal or review is provided within the agency." 5 M.R.S.A. § 8002(4). Despite the distinctly adjudicative flavor of the above definition, "final agency action" is not necessarily limited to strictly adjudicative decisions. The draftsmen of the Maine APA were guided by and borrowed from various provisions of the Model State Administrative Procedure Act. 14 Uniform Laws Annotated 371 (1980). *See, e. g.,* Commentary to §§ 8055, 9059, Me.Leg.Doc. No. 1768, 108th Leg., 1st Sess. (1977). When the draftsmen framed the provision governing judicial review, however, they deliberately departed from the language of the Model Act. The Model Act confines jurisdiction to the review of a "final decision in a contested case." Model State Administrative Procedure Act, *supra,* at § 15. The Model Act's definition of "contested case," *id.* at § 1, is substantially similar to the Maine Act's definition of "adjudicatory proceeding," 5 M.R.S.A. § 8002(1), as opposed to the Maine Act's broader definition of "final agency action." 5 M.R.S.A. § 8002(4). *Cf.* Mass.Gen.Laws Ann. ch. 30–A, § 14 (West 1979) (confining judicial review to final decisions in an "adjudicatory proceeding"). Commenting upon the breadth thus conferred on the scope of judicial review under Maine's APA, the draftsmen stated: "The definition [of 'final agency action'] is intended to make *all* agency decisions affecting one's legal rights, duties or privileges judicially reviewable, not just those made in licensing or adjudicatory proceedings." Commentary to § 8002(4), Me.Leg.Doc. No. 1768, 108th Leg., 1st Sess. (1977) (emphasis added).

Applying the definition of "final agency action" to the facts of the case before us, we note that the competitive bidding law does not expressly provide someone in the plaintiff's position with "further recourse, appeal or review . . . within the agency." 5 M.R.S.A. § 8002(4). *See* 5 M.R.S.A.

§§ 1501–1824. Once the Department decided to award the lease contract to Schmidt, its decision in effect became "dispositive of all issues, legal and factual," *id.*, § 8002(4). Schmidt's "rights" and "duties" were "affected" by the decision to award the contract; if, as the plaintiff alleged in its petition, the Department abused Maine's competitive bidding law in the process of making the award to Schmidt, then the plaintiff, as an unsuccessful bidder, was aggrieved by the decision. We conclude, therefore, that determining to confer the contract in this case fits the literal definition of "final agency action" in 5 M.R.S.A. § 8002(4).

■ The foregoing conclusion does not automatically result in the further conclusion that the action is subject to judicial review. The broad language of 5 M.R.S.A. § 8002(4) (defining final agency action) and 5 M.R.S.A. § 11001(1) (conferring jurisdiction on the Superior Court to review final agency action) must be read in light of the constitutional doctrine of separation of powers. *See* Me.Const. art. III. The Legislature may not constitutionally confer on the judiciary a commission to roam at large reviewing any and all final actions of the executive branch. Some executive action is by its very nature not subject to review by an exercise of judicial power. It is unnecessary here to define the precise limits of the judicial power granted in the constitution. *See* Me.Const. art. VI. It is sufficient to note that there are limits. As cases arise under the Administrative Procedure Act, we may have occasion to define the scope of the judicial power.

In the instant case, we have no difficulty in concluding judicial review is consistent with constitutional limitations because, through a variety of procedural techniques, courts have undertaken such review even without express statutory authority. *See, e. g., Brown v. City of Phoenix*, 77 Ariz. 368, 272 P.2d 358 (1954) (writ of mandamus); *Quincy Ornamental Iron Works, Inc. v. Findlen*, 353 Mass. 85, 228 N.E.2d 453 (1967) (bill for declaratory relief); *J. Slotnik Co. v. Massachusetts Public Bldg. Commission*, 328 Mass. 608, 619, 105 N.E.2d 476, 483 (1952) (writ of certiorari); *see generally* 10 E. McQuillan, *Municipal Corporations* § 29.83 (3d ed.1966).[2]

## II.

■ In maintaining that its petition for review was timely filed, the plaintiff charges that the Superior Court misapplied the law to the facts. The relevant provision of the APA, 5 M.R.S.A. § 11002(3), sets forth two distinct time limitations, one relating to a "party," the other to a "person aggrieved":

> The petition for review shall be filed *within 30 days after receipt of notice if taken by a party* to the proceeding of which review is sought. *Any other person aggrieved shall have 40 days from the date the decision was rendered* to petition for review. *Id.* (emphasis added).

The Superior Court found that the November 15, 1979 letter to Schmidt confirming final approval of his bid was the final agency action of which the plaintiff complained. It went on to find that by virtue of the facts presented in affidavits the

2. We recognize that many jurisdictions have not allowed a disappointed bidder to compel a contract award through use of the writ of mandamus. *See, e. g., State ex rel. Nebraska Bldg. & Inv. Co. v. Board of Comm'rs*, 105 Neb. 570, 181 N.W. 530 (1921). We also note that unless made available by statute use of the writ of certiorari has been even more limited. *See generally* 10 E. McQuillan, *Municipal Corporations* § 29.87 (3d ed.1966). Such reluctance appears to hinge less on broad constitutional limitations than on the degree of discretion conferred on administrative agencies by particular statutes and judicial concern with the long-established, carefully guarded strictures of the writs themselves. Some jurisdictions have permitted disappointed bidders to make use of the writs. Together with the cases cited in the text, *see, e. g., Marshall Co. v. Bigelow*, 29 Haw. 48 (1926); *Arensmeyer-Warnock-Zarndt v. Wray*, 118 Misc. 619, 194 N.Y.S. 398 (1922); *Boren & Guckes v. Commissioners of Darke County*, 21 Ohio St. 311 (1871). *See generally* Annot., 80 A.L.R. 1382 (1932).

In some states, judicial review of competitive bidding is expressly provided by statute, *e. g.*, Mich.Comp.Laws Ann. § 123.506 (West 1967); we have found no cases suggesting that such a grant of jurisdiction exceeds constitutional limits.

plaintiff was a "person aggrieved" by that action, not a "party" to it; that as a person aggrieved the plaintiff had forty days from November 15, the latest conceivable date on which the decision to contract was rendered, to petition for review; and that since plaintiff's petition was filed on December 27, forty-two days after November 15, the petition was not timely filed and, therefore, had to be dismissed.

We see no error in the above. Every petition filed under the Maine APA must specify the final agency action of which review is sought. 5 M.R.S.A. § 11002(2). The final agency action specified by the petition in the case at bar was the letter and accompanying lease contract of November 15. The petition states in pertinent part:

1. On or about November 15, 1979, the State of Maine Department of Manpower Affairs . . . entered into a lease contract with Douglas Schmidt. This lease contract was not awarded as a result of a competitive bidding system.

. . . .

4. The . . . Petitioner . . . seeks review of the Department's action in entering into the aforementioned lease . . . .[3]

If, as the plaintiff argues, the Department abused the competitive bidding system in the process of arriving at its November 15 decision to award the lease contract to Schmidt, we have no doubt that the plaintiff, as second lowest bidder to the contract, was a "person aggrieved" by the Department's decision. We cannot agree, however, that he was a "party" to it.

"Party" is defined by the Maine Administrative Procedure Act as "[t]he specific person whose legal rights, duties or privileges are being determined in the proceeding." 5 M.R.S.A. § 8002(7)(A). "Person aggrieved" is left undefined. We are unconvinced that

use of the word "proceeding" in this definition is anything more than legislative shorthand for "adjudicatory proceeding"—something the competitive bidding process manifestly is not. See 5 M.R.S.A. § 8002(1) (defining "adjudicatory proceeding"); Commentary to § 8002(7), Me.Leg.Doc.No.1768, 108th Leg., 1st Sess. (1977). Even if we assume the contrary, however, the specific person whose rights, duties, or privileges were determined in this proceeding was, if anybody, Douglas Schmidt. On the day of the final agency action of which the plaintiff seeks review, November 15, Schmidt was invited, and probably obligated, to sign an agreement with the Department embodying his lease proposal; not so the plaintiff.

In arguing that its petition for review was not filed too late, the plaintiff necessarily asserts that the entire competitive bidding process is a "proceeding" as this word is used in the above-quoted definition. By virtue of having bid in this "proceeding," according to the plaintiff, it automatically became, and remained, a "party." All such parties, the argument continues, are entitled to be notified in writing of any decision to award the contract to another. Because the plaintiff received written notification of the decision to award the contract to Schmidt on or about December 4, 1979 and because "parties" have thirty days to file after receipt of notice, the plaintiff concludes that its petition, filed on December 27, was timely.

■ Assuming, *arguendo*, that the competitive bidding process is a "proceeding" within the meaning of Section 8002(7)(A), we find this "once a party, always a party" approach to the issue unpersuasive. The plaintiff's bid was rejected by letter dated September 13. At that time the agency's action was final with respect to the plaintiff's bid. If the rejection of the plaintiff's

---

3. While the plaintiff's brief, as well as its petition, states that the lease contract was entered into on or about November 15, at oral argument the plaintiff asserted that the contract may have been executed much later. The record does not reveal the exact date of execution of the contract, but such information is immaterial to this case. The *decision* to contract

with Schmidt was rendered, obviously, no later than the day the Department wrote to Schmidt to confirm final approval of his bid, *i. e.*, November 15. For purposes of the running of the time for appeal, it is "the date the decision was rendered" that is crucial. 5 M.R.S.A. § 11002(3).

bid was unlawful, that action was subject to review on petition of the plaintiff within thirty days after receipt of notice of the rejection. The plaintiff's status as a "party" was terminated by the rejection of its bid and its failure to seek timely judicial review of that action.

According to the plaintiff's affidavits, between the time its bid was rejected and October 3, when the bid of Schmidt was tentatively accepted, the plaintiff had twice called an unspecified state agency and each time been led to expect that the contract would be re-bid later. Furthermore, the affidavit adds, the plaintiff's first notice that the contract had been awarded to Douglas Schmidt was received on or about December 4, 1979 in the aforementioned letter from the Department. The plaintiff allegedly proceeded to meet with the Assistant Director of the Department's Administrative Services on December 11 to discuss the bidding process further. In his own affidavit, the Department's Assistant Director disputes the time the plaintiff learned of the contract award; once in the first week of October and again in the last week of November, the Assistant Director allegedly told the plaintiff over the phone that the contract had gone to the lowest bidder.

The contents of these affidavits are summarized primarily to point out that, even when viewed in the light most favorable to the plaintiff, nothing in them amounts to an allegation of fraudulent concealment. We also point out that we have found no authority for the proposition that after rejecting the plaintiff's bid in September the Department was under a legal obligation to inform the plaintiff in writing of the ultimate disposition of the contract. That it did so was commendable; but, at least absent a request, written notification was not required.

■ By analogizing its position to that of an auction participant, the plaintiff maintains that the rejection of its bid on September 13 was immaterial to its rights, duties or privileges as a "party." As in an auction, asserts the plaintiff, so in competi-

tive bidding for public contracts, "[b]ids can be made and rejected indefinitely . . . until a contract is made or the subject of the bidding is removed from the process." If this analogy, which is apposite to characterize the nature of a bid itself, see, e. g., 64 Am.Jur.2d Public Works and Contracts § 30 (1972), is meant to suggest that a bidder for a public contract has a right to submit a sealed proposal after the deadline for submissions has passed, we reject it. See 5 M.R.S.A. § 1745. We likewise reject the analogy if it is meant to suggest that by virtue of allegedly having been led to expect a new round of bidding for the contract the plaintiff's right or privilege to re-bid was somehow greater than that of other rejected bidders and hence more effectively "determined" by the November 15 decision to make the award to Schmidt. As stated, fraud is not alleged. Furthermore, so far as we can tell from the plaintiff's affidavits, not once before the December 11 meeting with the Assistant Director of the Department did the plaintiff try to ascertain the status of the lease contract by contacting the Department itself.

Even if we were to assume, in spite of the absence of any evidentiary support, that the plaintiff was misled into not seeking review of the rejection of its bid by the suggestions in September and October that the matter was to be opened for re-bid, no explanation is offered for the plaintiff's failure to seek timely review after receipt of notice of the acceptance of Schmidt's bid. That notice was received on December 4. Rather than seeking judicial review as a person aggrieved, the plaintiff elected to seek discussions with the agency. Even when those discussions proved fruitless, fourteen days remained within which to seek judicial review. Again the plaintiff elected to wait until the time expired before seeking review.

■ On a different tack, the plaintiff relies on the law of standing to support its final argument for acquisition and retention of "party" status. Citing Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859 (D.C.Cir.1970), and progeny, the plaintiff

asserts, in effect, that disappointed bidders would not be given standing to seek judicial review unless their rights were affected by abuse of the proceeding and, since the Maine APA defines "party" as "[t]he specific person whose ... rights ... are being determined in the proceeding," 5 M.R.S.A. § 8002(7)(A), the presence of standing *ipso facto* confers party status.

The argument is circular. Not only "part[ies]" but also "person[s] aggrieved" are accorded standing. By the plaintiff's progress of logic, however, a "person aggrieved" would be simultaneously a "party" and the Legislature's distinction in Section 11002(3) would be meaningless.

### III.

■ The plaintiff followed its petition for review, filed on December 27, with a motion for a preliminary injunction filed the next day. A hearing on the motion for a preliminary injunction was at first scheduled for February 8, 1980 and subsequently moved forward to January 29, 1980 on the initiative of the Department. So that he might be a party to the January 29 hearing, Schmidt, on January 28, filed a request for reduction of the seven-day notice requirement of M.R.Civ.P. 6(d). He accompanied this request with a written appearance pursuant to 5 M.R.S.A. § 11005, a motion to intervene and a motion to dismiss the plaintiff's petition for, among other reasons, untimely filing. The Department had not moved to dismiss the petition.

The plaintiff was served with Schmidt's motions only a few days before the January 29 hearing, and no order shortening the seven-day notice requirement of M.R.Civ.P. 6(d) is entered on the docket. The plaintiff's first claim of procedural error arises out of this alleged Rule 6(d) violation, which the plaintiff insists prejudiced its opportunity to effectively oppose Schmidt's motion to dismiss. Our review of the record, however, does not demonstrate that the court on January 29 heard any argument on

Schmidt's motion to dismiss. It appears, rather, that the court took the motion under advisement pending submission of written arguments. Under these circumstances, we do not find that the plaintiff was prejudiced by surprise.

■ The plaintiff claims, further, that the court failed to notify it of the decision not to hear oral argument on Schmidt's motion to dismiss, thereby depriving it of the chance to fully address the issue of timeliness. In *Spickler v. Carzis*, Me., 349 A.2d 173 (1975), we found that although M.R.Civ.P. 78 permits the trial court to dispense with oral argument if it makes provision for submission of written statements for and against a motion the court must, when it chooses to invoke Rule 78, inform the parties of its intention to do so. Unlike *Spickler*, however, in the instant case all three parties had the opportunity to and in fact did submit memoranda addressing the issue of timeliness. Thus, if the trial court failed to actually inform the plaintiff of its intention to rule on the motion to dismiss without giving the plaintiff the chance to argue orally against the motion, we consider the error harmless.

■ The last error claimed by the plaintiff arises out of the fact that only Schmidt, not the Department, affirmatively raised the issue of untimely filing of the petition for review. Schmidt filed his motion to dismiss contemporaneously with his written appearance over thirty days after the filing of the plaintiff's petition for review. The Maine APA gives parties to an agency proceeding who wish to participate in judicial review only twenty days after a petition is filed to file a written appearance. 5 M.R.S.A. § 11005. Therefore, concludes the plaintiff, neither Schmidt nor Schmidt's motion to dismiss was ever properly before the court.[4]

■ We stated in *Reed v. Halperin*, Me., 393 A.2d 160, 162 (1978), that judicial enlargement of a statutorily provided peri-

---

4. Of course, as the person whose contractual rights against the Department might be affected by this litigation, Schmidt was an indispens-able party and should have been joined as a defendant in the plaintiff's petition. M.R.Civ.P. 19(b).

od of appeal is not possible, noting, *id.* n. 6, that the APA makes no provision for an extension of the time limitations on judicial review. We now state expressly that the Act's time limitations are jurisdictional. *See Chem-Haulers, Inc. v. United States,* 536 F.2d 610 (5th Cir. 1976); *Carbonneau v. Personnel Appeal Board,* 31 Conn.Supp. 186, 326 A.2d 136 (C.P. 1974); *Varnes v. Lentz,* 30 Ill.App.3d 806, 332 N.E.2d 639 (1975). *Cf. Maine Mack, Inc. v. Skeels,* Me., 330 A.2d 420 (1975) (time within which appeals must be filed from District to Superior Court is mandatory and jurisdictional). As limitations on jurisdiction, the Act's time periods for appeal are noticeable *sua sponte.* The Superior Court's duty to dismiss an action when it learns it is without jurisdiction is not affected by the manner in which the jurisdictional facts in the record are brought to its attention.

The entry is:

Judgment affirmed

No award of costs to appellee Douglas Schmidt.

All concurring.