George C. HALL

v.

UNITED STATES FIDELITY &
GUARANTY COMPANY.[1]

Supreme Judicial Court of Maine.

Argued Sept. 10, 1981.

Decided Oct. 29, 1981.

Little & Watkinson, Stephen A. Little (orally), Rockland, for plaintiff.

Bernstein, Shur, Sawyer & Nelson, John M. R. Paterson (orally), William W. Willard, Portland, for U. S. Fidelity & Guaranty Co.

Limberis & MacDonald, George Limberis, Bangor, for Libby Const.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

CARTER, Justice.

The plaintiff-supplier, George C. Hall, brought this action against the contractor, Libby Construction Company, Inc. (Libby), and against Libby's surety, United States Fidelity & Guaranty Company (Fidelity), alleging that he had not been paid for materials supplied to Libby, and that Fidelity was also liable pursuant to its Contract Payment Bond with Libby. The Superior Court (Cumberland County) awarded Hall judgment for $24,510.35 against Libby, but granted Fidelity's motion for summary judgment on the grounds that Hall's action was not commenced before the expiration of the applicable statute of limitations. Hall appeals from the entry of final judgment in favor of Fidelity. We affirm the decision below.

In 1974, Libby entered into a contract with the State Department of Transportation to construct part of a highway in Knox County. In that same year, Fidelity entered into a surety agreement with Libby, whereby Fidelity agreed to satisfy claims for labor and materials provided to Libby in case Libby should default. Hall, in turn, entered into a subcontract with Libby to furnish gravel and sand for the project.

Hall last worked on the highway project in 1975. The parties agree that on February 16, 1978, the State Department of Transportation determined the final quanti-

1. We have recaptioned the case by deleting Libby Construction Company, Inc. (Libby) as a party. Neither named party asserts any issues involving the judgment below against Libby, and Libby did not participate in either briefing or argument of this appeal.

ty estimates of materials supplied for the highway project, including final quantity estimates of materials supplied by Hall. Fidelity was notified of these estimates by letter dated February 16, 1978; Hall was notified by letter dated March 10, 1978. Hall filed with the Superior Court his complaint against Libby and Fidelity commencing this action on March 9, 1979.

The parties agree that Hall's action against Fidelity on the Contract Payment Bond is governed by the Public Works Contractors' Surety Bond Law of 1971, 14 M.R. S.A. § 871 (1980), and that the amount of Hall's claim against Libby and Fidelity could not have been ascertained until final quantity estimates were determined. Section 871(4) states in part:

> Any ... claimant having a direct contractual relationship with a subcontractor of the contractor furnishing such payment bond but no contractual relationship, express or implied, with such contractor shall not have the right of action upon such payment bond unless he shall have given written notice to such contractor within 90 days from the date on which such claimant performed the last of the labor, or furnished or supplied the last of the material for which such claim is made ....
>
> .    .    .    .    .
>
> No ... action [on the payment bond] may be commenced after ... one year from the date on which the last of the labor was performed or material was supplied .... Provided that in the case of a material supplier, where the amount of the claim is not ascertainable due to the unavailability of final quantity estimates, such action may be commenced before the expiration of one year from the date on which the final quantity estimates *are determined.* The notice of claim from the material supplier to the contractor furnishing the payment bond shall be filed before the expiration of 90 days following the *determination by the con-*

*tracting authority* of the final quantity estimates.

(Emphasis added.) The issue that we must determine is when the one year statute of limitations began to run.

Relying on a claimed variance in the language used by the legislature in section 871(4) and emphasized above, Hall contends that different events must trigger the running of the ninety day notice provision and the one year statute of limitations. Because the ninety day period for providing notice to the contractor begins to run upon "the determination by the contracting authority of the final quantity estimates," argues Hall, the one year limit must commence following a different event. It is indisputable that the notice provision, itself, does not apply to Hall in this case since he is a materialman having a direct contractual relationship with Libby, the contractor providing the payment bond. Hall suggests as possible triggering events either the date upon which final quantity estimates are determined by the material supplier, or the date upon which actual notice of the estimates made by the contracting authority is received by the material supplier. We disagree.

The fundamental rule in statutory construction is that words must be given their plain meaning. Of course, legislative intent is always of fundamental importance. Thus, the court has disregarded the strict wording of statutes to avoid absurd results, or to [avoid] inconsistent or unreasonable results.

*Paradis v. Webber Hospital*, Me., 409 A.2d 672, 675 (1979) (citations omitted). Giving the phrase "the date on which the final quantity estimates are determined" its plain meaning, the one year limitations period here would have commenced to run on February 16, 1978, when the Department of Transportation determined final quantity estimates.[2] That result is not absurd, inconsistent or unreasonable.

---

**2.** At oral argument, Hall argued for the first time that the Department of Transportation did not follow proper procedures in making its fi-

nal quantity estimate determinations, and that therefore those determinations are invalid.

This construction of the statutory language is confirmed by the Legislature's use of "determined" as the operative word identifying the event intended. The determination referred to is obviously that on the basis of which payments are to be made upon the contract. Because the contracting authority is responsible for establishing the factual foundation on which payments are to be made, *its* determination of the quantities of material for which payment is to be made should logically be made the controlling predicate for the commencement of the period of limitations. Such determinations are the ones contemplated by the legislative language precisely because of their controlling significance on the making of the payments.

Quantity estimates compiled by the materialman, on the other hand, do not have any controlling effect upon payment until they are approved and adopted by the contracting authority as its own. They are merely submissions by the materialman for approval by the contracting authority after investigation and verification as to the amounts of materials for which payment is to be made. They may be "determinations" from the materialman's personal perspective, but they are not controlling on payments until approved by the contracting authority. They are not, therefore, "determinations" within the meaning of the statutory language. Thus, Hall's argument that the period of limitations commences from the materialman's making of such estimates is not in accord with the legislative intent expressed by the language of the statute.

We find further confirmation of our construction of this language in the fact that, even in a case where the notice provision is applicable, a material supplier (whose claim is ascertainable only after the determination of final quantity estimates) must act, in order to comply with the ninety day notice provision, within ninety days of the determination of final quantity estimates by the contracting authority or risk losing his cause of action on the payment bond.[3] Thus, the supplier, in such a situation, must be diligent in inquiring as to when the contracting authority makes its final estimate determinations for purposes of complying with the notice requirement. Because the supplier must be aware of when the contracting authority so determines, it is reasonable and consistent with the legislative design to trigger the running of the longer one year limitation period by the

There is absolutely no evidence in the record to either support or rebut that allegation.

A party who seeks to raise an issue for the first time at the appellate level is held to have waived that issue insofar as he utilizes it to attack the judgment or order from which he appeals. A major policy underlying this principle is to ensure that the trial court has full opportunity to dispose finally of the action.

*Laurel Bank and Trust Co. v. Burns*, Me., 398 A.2d 41, 44 (1979). That policy applies here. Hall failed to present evidence below to show that an issue of fact existed, *inter alia*, as to whether proper procedures were followed by the contracting authority. He may not do so for the first time on appeal.

3. Hall's argument misconceives the potential impact of the ninety day notice requirement under this particular statute, even where it applies. His argument might have some merit on the question of failure to comply with the notice requirement *if the statute required the notice to be given within ninety days before the commencement of the action.* See 24 M.R.S.A. § 2903. In such a case, a potential conflict may occur between the notice requirement and the period of limitations requirement if the plaintiff delays filing the notice to within ninety days of the end of the period of limitation. We have dealt with such a problem under 24 M.R.S.A. § 2903 in *Dougherty v. Oliviero*, Me., 427 A.2d 487 (1981), holding that where the action is commenced within the period of limitations, a stay is the appropriate remedy to permit compliance with the notice requirement of that statute.

Under the statute in question in this case, however, there is no possible potential conflict between the notice provision, even where it applies, and the period of limitations requirement if both the notice period and the limitation period commence at the same time. The statute plainly requires that the notice be given where it is applicable in the *first* ninety days of the period of limitation. To interpret the statute to establish a different commencement date where the notice provision does apply, would not resolve an existing conflict, as Hall suggests, but, to the contrary, would create an opportunity for one which is not now present under the plain meaning of the statute.

same date. There is no consequence resulting from the imposition of the notice requirement in a case to which it properly applies that reasonably dictates a different commencement date for the period of limitations when the notice requirement applies than for when it does not apply. Thus, the greater specificity as to the identification of the commencement date in the last sentence of section 871(4) was not intended to differentiate a distinct commencement date in circumstances where the notice provision applies. Rather, it was simply an amplification of what the Legislature intended to be the common event that was to control (*e. g.*, the determination of final quantity estimates by the contracting authority) whether or not the notice provision applies.

Hall does not allege, and nothing in the record indicates, fraudulent concealment by the Department of Transportation of either the final quantity estimates themselves, or of the date upon which such determinations were made. To the contrary, when Hall received notice of the estimates, over eleven months remained within which to commence an action on the payment bond. Yet, Hall did not bring his action until the time for doing so had expired. *Cf. Brown v. State, Department of Manpower Affairs*, Me., 426 A.2d 880, 886 (1981).

We have examined Hall's other arguments and find them to be without merit.

The entry is:

Judgment affirmed.

All concurring.