NORTHEAST OCCUPATIONAL
EXCHANGE, INC.

v.

BUREAU OF REHABILITATION.

Supreme Judicial Court of Maine.

Argued Sept. 14, 1983.
Decided March 6, 1984.

Ferris, Dearborn & Willey, Joel A. Dearborn (orally), Brewer, for plaintiff.

Katherine Greason, Asst. Atty. Gen. (orally), Department of Human Services, Legal Div., Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ.

GLASSMAN, Justice.

This case comes to us on appeal from a judgment of the Superior Court, Penobscot County, granting the defendant's motion to dismiss the plaintiff's complaint. The plaintiff, Northeast Occupational Exchange (NOE),[1] argues that the Superior Court erred in ruling that the defendant Bureau of Rehabilitation's (Bureau) decision to cease referring clients to NOE did not constitute "final agency action" pursuant to the Maine Administrative Procedure Act (APA), 5 M.R.S.A. § 11001(1) (1979 & Supp. 1982–1983). Agreeing with the Superior Court, we affirm the judgment.

In 1969, the Maine Legislature enacted the Rehabilitation Act, 22 M.R.S.A. ch. 713 (1980). The Rehabilitation Act authorized the creation of an administrative unit within the Department of Human Services to administer programs designed to rehabilitate handicapped and disadvantaged individuals. *Id.,* §§ 3052–54. The Bureau of Rehabilitation, so created, is charged with administering several of these programs on behalf of the state, including a federal program of vocational rehabilitation designed to prepare handicapped persons for gainful employment, 29 U.S.C. §§ 720 *et seq.* (1976 & Supps.1977–1981). Under the federal program, a counselor screens an applicant to determine whether she or he meets eligibility criteria. If deemed capable of employment, the applicant is referred to a public or private rehabilitative facility for training. Although federal and state guidelines require a rehabilitative facility to meet certain criteria before becoming eligible to service program clients,[2] the Bureau of Rehabilitation is not required to utilize every facility which meets controlling standards.[3]

On January 8, 1980, the Bureau of Rehabilitation sent a letter to NOE officially authorizing it for the use of vocational rehabilitation program clients. The letter stipulated that continued authorization was conditioned upon NOE's submission of a timetable to the Bureau within three months indicating compliance with Bureau standards.[4] On July 17, 1980, the Bureau, in a letter signed by the Director of the Bureau of Rehabilitation, Owen Pollard, withdrew authorization of NOE. Although the letter charged that NOE did not share in case planning, did not issue progress reports, and did not comply with the conditions of the January 8, 1980 letter, the trial

1. In the original complaint, Charles Tingley, Executive Director of NOE, was also a named plaintiff. Because Tingley has no interest in the suit separate from NOE, there is no basis for his joinder in the action. Accordingly, we have deleted Tingley as a party plaintiff.

2. The federal guidelines are found at 29 U.S.C. § 720 *et seq.* (1976 & Supps.1977–1981). The regulations which the states must follow to be eligible for a federal vocational rehabilitative training grant are found at 34 C.F.R. § 361 *et seq.* (1983) (formerly codified at 45 C.F.R. §§ 1361 *et seq.* (1980)). The Maine regulations governing program standards are found in a

document entitled, A Procedure for Initiating VR use of Rehabilitation Facility Services, Item 2000 (1979).

3. Congress provided, however, for maximum utilization of "public or other vocational or technical training facilities or other appropriate resources in the community." 29 U.S.C. § 721(a)(12) (1976).

4. The January 8, 1980 letter stated that the program at NOE was not in compliance with state requirements in several areas, including a lack of written procedures and policies for client intake, service needs, and discharge.

court entered no findings in regard to the reason for the "de-authorization." The trial court held the "de-authorization" did not amount to "final agency action" and was thus not reviewable under the APA,[5] and therefore, did not entertain NOE's contention that the action of the Bureau was arbitrary and capricious. The court explained that the defendant had not formally declared NOE ineligible, and could again refer clients to NOE in the future. The court found that the July 17, 1980 letter was "only a pronouncement of the defendant's intention to cease working with the plaintiff until all differences were resolved."

 Pursuant to the Maine Administrative Procedure Act, the Superior Court is authorized to hear petitions for review filed by any person[6] "aggrieved by final agency action," and, in very limited circumstances, by non-final agency action.[7] 5 M.R.S.A. § 11001(1).[8] "Final agency action" is an agency decision "which affects the legal rights, duties or privileges of specific persons, which is dispositive of all issues, legal and factual, and for which no further recourse, appeal or review is provided within the agency."[9] 5 M.R.S.A. § 8002(4).

The statutory requirement that an agency action be final to be reviewable is entirely in accord with judicial doctrine, and imposes a realistic and important restraint upon the power of the courts. We have long recognized that, subject to certain exceptions, "where the law provides a remedy before an administrative agency, the plaintiff must exhaust that remedy before he can turn to the courts for relief." *Stanton*

---

**5.** NOE sought an order from the Superior Court to the Bureau mandating utilization of NOE as a rehabilitative facility. We intimate no opinion as to whether such relief would be appropriate.

**6.** The APA defines "person" very broadly, and includes the petitioner. *See* 5 M.R.S.A. § 8002(8) ("person" includes any individual or entity other than agency conducting proceeding). In order to have standing to seek review of an agency action, a person must have suffered "particularized injury." *Heald v. School Admin. Dist. No. 74,* 387 A.2d 1, 3 (Me.1978); *In re Lappie,* 377 A.2d 441, 442–43 (Me.1977).

**7.** The APA precludes courts from entertaining review of an agency decision, however, where expressly prohibited by statute. 5 M.R.S.A. § 11001(1); *see, e.g., McElroy v. State Employees Appeal Bd.,* 427 A.2d 958, 961 (Me.1981) (judicial review specifically precluded by governing statute). The statute governing the administration of rehabilitative services in Maine offers no such prohibition. *See* 22 M.R.S.A. ch. 713.

**8.** 5 M.R.S.A. § 11001(1) provides:

1. Agency action. Except where a statute provides for direct review or review of a pro forma judicial decree by the Supreme Judicial Court or where judicial review is specifically precluded or the issues therein limited by statute, any person who is aggrieved by final agency action shall be entitled to judicial review thereof in the Superior Court in the manner provided by this subchapter. Preliminary, procedural, intermediate or oth-

er non-final agency action shall be independently reviewable only if review of the final agency action would not provide an adequate remedy.

**9.** In *Brown v. Department of Manpower Affairs,* 426 A.2d 880 (Me.1981), we stated that despite the adjudicative flavor of the definition of final agency action, judicial review is not limited to strictly adjudicative agency decisions. *Id.* at 883; *see* L.D. 1768, commentary to § 8002(4) (108th Legis.1977) (definition of final action includes all decisions affecting one's legal rights, duties or privileges, not just those made in adjudicatory proceedings). In *Brown,* we recognized all decisions of administrative agencies which are final are not necessarily reviewable, and observed that pursuant to the constitutional doctrine of separation of powers, the Legislature may not "confer on the judiciary a commission to roam at large reviewing any and all final actions of the executive branch." *Id.* at 884. Moreover, as a matter of sound judicial policy, we will not undertake review of administrative decisions which are properly classified as ministerial, or which are not centrally related to the function for which the agency was created. For purposes of this appeal we note only that the Bureau of Rehabilitation administers a federal program of vocational rehabilitation designed to aid the handicapped, rather than to provide business for rehabilitation facilities. *See* 29 U.S.C. § 720(a) (1976) (purpose of vocational rehabilitation services program is to aid handicapped individuals prepare for and engage in gainful employment); *see also supra* note 5.

*v. Trustees of St. Josephs College,* 233 A.2d 718, 723–24 (Me.1967). In *Stanton,* we explained that the exhaustion doctrine is "based upon a policy of avoiding interference with the functions of an agency created by the Legislature and a recognition of the advantages of leaving some preliminary determinations to agencies which are particularly competent to dispose of them." *Id.* at 724. Moreover, as an Illinois Appellate Court noted, the rule is "primarily designed to allow administrative agencies to correct their own errors, clarify their policies, and reconcile conflicts before resorting to judicial relief." *Kenilworth Insurance Co. v. Mauck,* 50 Ill.App.3d 823, 826, 8 Ill. Dec. 665, 667, 365 N.E.2d 1051, 1053 (1977). Additionally, requiring plaintiffs to exhaust administrative remedies facilitates judicial review. When an aggrieved individual goes through an adjudicatory or quasi-adjudicatory proceeding, it is more likely that a court will have a complete record to review. In *Gashgai v. Board of Registration in Medicine,* 390 A.2d 1080 (Me.1978), we stressed the importance of findings of fact to a reviewing court. We noted that factual findings below "facilitate judicial review, avoid judicial usurpation of administrative functions, assure more careful administrative consideration, help parties plan their cases for rehearings and judicial review, and keep agencies within their jurisdiction." *Id.* at 1085.

▪ In the case at hand, the plaintiff failed to pursue an avenue of administrative appeal available to it. At trial, the plaintiff introduced into evidence a document entitled "A Procedure for Initiating VR Use of Rehabilitation Facility Services." Owen Pollard, the Director of the Bureau, testified that this document contained standards the Bureau follows when considering whether to authorize a rehabilitative facility to provide services to Bureau clients. Step five of these procedures provides:

Step # 5—*Facility Use Approval*

. . . .

B. The Manager of CRU [Community Resources Unit] will notify the facility representative and the appropriate BR [Bureau of Rehabilitation] Regional staff(s) of:

1. The facility's services which have been approved for BR use.

2. The fee(s) which BR will pay for such services.

3. The conditions which the facility must meet in order for BR use of the facility's services to continue.

C. In the event that the BR Regional Director or the facility representative disagree with the decisions made by the Manager of CRU in Step # 5.B, they may appeal to the Director of the Bureau of Rehabilitation for reconsideration.

The de-authorization of NOE was in large part due to a disagreement between the Bureau and NOE concerning two matters: the proper fee for NOE's services, and NOE's alleged noncompliance with Bureau standards. Pursuant to the above quoted Bureau standard, NOE had a right to appeal the Bureau's determinations regarding these matters to the Director of the Bureau, a right which NOE failed to exercise. Therefore, the dismissal of NOE's complaint was proper unless the de-authorization was the type of nonfinal agency action subject to review under the APA, or NOE's failure to pursue an available remedy can otherwise be excused.

Nonfinal agency action is independently reviewable pursuant to the APA when "review of the final agency action would not provide an adequate remedy." 5 M.R.S.A. § 11001(1). The commentary to section 11001(1) provides insight into the legislative intent behind this provision. The drafters of section 11001(1) cited to *Isbrandtsen Co. v. United States,* 211 F.2d 51 (D.C.Cir.), *cert. denied, Federal Maritime Board v. United States,* 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124 (1954), when stating that nonfinal agency decisions are reviewable only when review of the final action would be ineffective. In *Isbrandtsen,* the D.C. Circuit Court of Appeals declared that the "ultimate test of reviewability is not to be

found in an overrefined technique, but in the need of the review to protect from the irreparable injury threatened in the exceptional case by administrative rulings which attach legal consequences to action taken in advance of other hearings and adjudications that may follow...." *Id.* at 55 (quoting *Columbia Broadcasting System v. United States,* 316 U.S. 407, 425, 62 S.Ct. 1194, 1204, 86 L.Ed. 1563 (1942)). More recently, the D.C. Circuit observed that review of nonfinal agency actions should be undertaken only when "the parties face the prospect of irreparable injury, with no practical means of procuring effective relief after the close of the proceedings...." *Cities of Anaheim and Riverside v. Federal Energy Regulatory Commission,* 692 F.2d 773, 779 (D.C.Cir.1982) (quoting *Papago Tribal Utility Authority v. FERC,* 628 F.2d 235, 239 (D.C.Cir.), *cert. denied,* 449 U.S. 1601, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980)).

An appeal to the Director of the Bureau of Rehabilitation in the instant case might have provided NOE with the relief requested. Although the relationship between NOE and the Bureau was certainly strained, it does not necessarily follow the parties would have been unable to resolve their differences in regard to fees and NOE's compliance with Bureau standards and thereby avoid judicial review. By insisting that NOE pursue an appeal to the Director of the Bureau, we are insuring that an administrative agency has every opportunity to resolve a matter in its area of special competence before its actions become subject to judicial review. *See Cushing v. Smith,* 457 A.2d 816, 821 (Me.1983) (doctrine of exhaustion recognizes advantages of leaving some determinations to agency which is particularly competent to adjudicate them).

■ We are mindful that the administrative remedy available to the plaintiff involved an appeal to the Director of the Bureau, and that the Director had been involved in the decision to de-authorize NOE. In rare instances, the patent futility of an appeal because of the direct involve-

ment of the reviewing body in the very decision taken exception to might excuse a failure to exhaust that remedy. *See Northwestern University v. City of Evanston,* 74 Ill.2d 80, 88, 23 Ill.Dec. 93, 97–8, 383 N.E.2d 964, 968–69 (1978). It is not clear in this case, however, that an appeal to the Director of the Bureau would have been futile. As the Illinois Supreme Court has noted, "[t]he exhaustion requirement cannot be avoided simply because relief may be, or even probably will be, denied by the local authorities." *Id.,* 23 Ill.Dec. at 98, 383 N.E.2d at 969.

■ Additionally, we note that Pollard's involvement in the de-authorization process raises a question concerning his ability to have acted as an impartial adjudicator had NOE pursued an appeal to him. We have previously intimated that prejudgment concerning the specific facts presented for adjudication might provide grounds for disqualifying an individual from serving as an adjudicator. *New England Telephone and Telegraph Co. v. Public Utilities Commission,* 448 A.2d 272, 280 (Me.1982); *cf. Hortonville Joint School District No. 1 v. Hortonville Education Association,* 426 U.S. 482, 493, 96 S.Ct. 2308, 2314, 49 L.Ed.2d 1 (1976) (fact that administrator took public position in relation to policy surrounding dispute presented is not grounds for disqualification); *see also Frye v. Inhabitants of Town of Cumberland,* 464 A.2d 195, 198–99 (Me.1983). Disqualification in such circumstances would be necessary to protect the due process right to an impartial hearing. *See Sevigny v. City of Biddeford,* 344 A.2d 34, 40–41 (Me.1975); *see also New England Telephone,* 448 A.2d at 280 (administrative hearing must be conducted in impartial manner). We do not, however, need to consider whether Pollard would, in fact, be disqualified from hearing NOE's appeal. A tribunal should act despite the presence of reasons for disqualification when no competent alternate body is available to hear an appeal. *See United States v. Will,* 449 U.S. 200, 213–17, 101 S.Ct. 471, 480–82, 66 L.Ed.2d 392 (1980); *Evans v. Gore,* 253 U.S.

245, 247–48, 40 S.Ct. 550, 551, 64 L.Ed. 887 (1920), *rev'd on unrelated grounds, O'Malley v. Woodrough,* 307 U.S. 277, 59 S.Ct. 838, 83 L.Ed. 1289 (1939). This "rule of necessity" has been applied to state administrative officers. *See, e.g., State v. Board of Medical Examiners,* 135 Mont. 381, 339 P.2d 981 (1959); *Borough of Fanwood v. Rocco,* 33 N.J. 404, 165 A.2d 183 (1960). *See generally* 2 K. Davis, *Administrative Law Treatise* § 12.04 *passim* (1958 & Supp.1970) (discussing rule of necessity). Pursuant to Bureau of Rehabilitation standards, Pollard was the only agency official empowered to hear NOE's appeal. Therefore, possible prejudgment or bias on the part of Pollard provides no excuse for the failure to pursue an appeal to him.[10]

█ Other exceptions to the rule requiring exhaustion of administrative remedies are similarly inapplicable. Judicial review may be undertaken despite a failure to exhaust all administrative remedies where the questions involved are ones only of law, *Churchill v. S.A.D. # 49 Teachers Association,* 380 A.2d 186, 190 (Me.1977); *Stanton,* 233 A.2d at 724, or where the administrative agency is not empowered to grant the relief requested and, therefore, completion of the appeal process would be futile. *Churchill,* 380 A.2d at 190. Because an appeal in this case would clarify issues of fact and the Director of the Bureau of Rehabilitation is able to grant the relief NOE requested, these exceptions are not pertinent.

The entry is:

Judgment affirmed.

McKUSICK, C.J., and ROBERTS and WATHEN, JJ., concurring.

VIOLETTE, Justice, with whom NICHOLS, Justice, joins, dissenting.

I respectfully dissent. I do not agree that the "de-authorization" decision of the

Director of the Bureau on July 17, 1980, is not reviewable agency action within the meaning of the Maine Administrative Procedure Act (APA). 5 M.R.S.A. § 11001(1) (1979). It is my opinion that the decision constituted final agency action entitling plaintiffs to judicial review.

The Superior Court, in dismissing plaintiffs' action, said in pertinent part:

The action taken by the defendant on July 17, 1980, is not "final agency action" as defined in 5 M.R.S.A. § 8002(4). While it is true that a plaintiff need not prove that the decision of the agency was adjudicatory in nature, see *Brown v. State, Department of Manpower Affairs,* Me., 426 A.2d 880, 883 (1981), he must show nonetheless that the action was "dispositive" and that "no further recourse" exists. See 5 M.R.S.A. 8002(4). Here, the plaintiff's substantial rights remain undetermined and the agency has stated that it cannot at present work with the plaintiff. Thus, even though the letter of July 17, 1980 could be considered an informal final determination, see 2 Am.Jur.2d *Administrative Law* § 585 (1962), the Court concludes that it is only a pronouncement of the defendant's intention to cease working with the plaintiff until all differences are resolved. (Emphasis in original).

This Court affirms the trial court's dismissal for lack of final agency action, but for a different reason. It grounds its decision on a finding that plaintiffs have failed to exhaust their administrative remedies. It is my judgment that both the trial court and this Court are wrong.

**I.**

The APA defines "final agency action" as "a decision by an agency which affects the legal rights, duties, or privileges of specific persons, which is dispositive of all issues, legal and factual, and for which no further

---

10. Some courts have held, however, that in these circumstances the decision which results is to be given more exacting scrutiny by the court. *E.g., Board of Education v. Shockley,* 52

Del. 277, 156 A.2d 214 (1959); *Wisconsin Tel. Co. v. Public Service Commission,* 232 Wis. 274, 287 N.W. 122 (1939). We have no need to consider this issue for purposes of this appeal.

recourse, appeal or review is provided within the agency." 5 M.R.S.A. § 8002(4) (1979). "Final agency action" is not limited to strictly adjudicative proceedings, but includes all decisions affecting one's legal rights, duties or privileges. *Brown v. Department of Manpower Affairs,* 426 A.2d 880, 883 (Me.1981); *see* Me.Leg.Doc. No. 1768, 108th Leg., 1st Sess., commentary to § 8002(4) (1977) (scope of judicial review exceeds adjudicatory proceedings). While the Court cautioned that, because of the constitutional doctrine of separation of powers, some executive actions are not reviewable by their very nature, *Brown,* 426 A.2d at 884, the agency action in this case is clearly not of the nature that would fall within such prohibition.

The facts of the case are important to the determination of this appeal. The Bureau letter of January 8, 1980, written by the Manager of the Community Resources Unit (CRU), officially authorized plaintiff NOE to be utilized as a facility by the Bureau for referrals of vocational rehabilitation clients. The rate of compensation was therein set. Because the Bureau believed NOE's program did not meet its standards in five specific areas, the letter stated that continued authorization required NOE to submit a compliance timetable within three months. It further provided for the submission within six months of a timetable for compliance with an Affirmative Action Plan. Referrals by the Bureau to NOE then followed. On July 17, 1980, the Director of the Bureau informed NOE that it would no longer be authorized to provide referral service to Bureau clients.[1] The letter cited difficulty in cooperation between NOE and the Bureau, and claimed that NOE did not share in case planning, did not issue progress reports, and did not comply with the condition of the January 8, 1980 authorization letter. The testimony of the Director of Field Operations indicated that the primary reason for the "deauthorization" was not the alleged failure to comply with the January 18, 1980 letter but was the inability of NOE to establish a viable working relationship with the Bureau. The parties disagreed as to the proper rates for services. NOE charged the Bureau with unfairness. The Bureau charged NOE with not properly servicing clients. Notwithstanding these charges, it is clear that the deauthorization was not a direct result of a failure of NOE to meet the minimal Bureau standards for authorization.

## II.

The Superior Court found no "final agency action" as defined in 5 M.R.S.A. § 8002(4). The court observed that the evidence neither indicated that defendant had formally declared NOE ineligible nor showed that the Bureau would never again refer clients to NOE. It found the "deauthorization" letter to be a mere pronouncement of the Bureau's intention to cease working with NOE until all differences were resolved. The court made no finding

---

1. The letter stated in pertinent part:
 July 17, 1980
 Charles O. Tingley, Jr., Ph.D.
 Northeast Occupational Exchange
 183 Harlow Street
 Bangor, Maine 04401
 Dear Doctor Tingley:
 This is to advise you that, after August 1, 1980, Maine's Bureau of Rehabilitation will no longer authorize your agency to provide any services to our clients. We will be making alternative arrangements for the clients who are needful of this range of service. We have made every effort to work cooperatively with you on behalf of clients, but we have not been able to do so and we continue not to share in case planning for our clients, to receive progress reports, or to know of their strengths and weaknesses upon discharge. We have repeatedly requested that you adhere to the requirements set forth in the January 8, 1980 letter from Richard Tripp, Manager of the Community Resources Unit; but, to date, you have not provided us with the materials needed.

 \* \* \* \* \* \*

 We sincerely regret that we have been unable to resolve those differences in our philosophy and practice which have created barriers to communication for our staff and hardships for our clients.
 Sincerely,
 C. Owen Pollard
 Director, Bureau of Rehabilitation

as to the propriety of the Bureau's termination of its authorization to NOE.

I believe the trial court committed error in its determination of no "final agency action" and, therefore, erroneously dismissed plaintiffs' complaint.

The complaint raised only one issue and only that issue was before the trial court. The complaint alleged that NOE, on January 8, 1980, was authorized or qualified to receive referrals from the Bureau; that on July 17, 1980, the Bureau rescinded that authorization, effective August 1, 1980; that such action was unwarranted, capricious, arbitrary and unreasonable; and prayed for relief.

It is my judgment that defendant's decision on July 17, 1980, to deauthorize plaintiff to provide any services after August 1, 1980, effectively disposed of all issues, legal or factual, as required by the APA as a prerequisite for judicial review. 5 M.R.S.A. § 11001(1) (1979). Although the Bureau may decide at some future date to again authorize NOE to receive referrals, this possibility does not lessen NOE's present injury from the loss of clients and thus income. The discretionary power of an agency to review and alter a decision does not render an otherwise final decision nonfinal. *Motorola, Inc. v. Illinois Fair Employment Practices Commission*, 34 Ill.2d 266, 272, 215 N.E.2d 286, 288, 290 (1966); *Seidner v. Town of Colonie*, 79 A.D.2d 751, 752, 434 N.Y.S.2d 800, 801 (1980); *see also Fidelity Television, Inc. v. F.C.C.*, 502 F.2d 443, 448 (D.C.Cir.1974) (principle of finality is governed by nature and effect of order, not by whether order is necessarily last in chain of administrative orders).

If the July 17, 1980 letter to NOE did not constitute "final agency action," it is difficult to envision an action the Bureau might take which would. Applying the rationale of the Superior Court, neither "reauthorization" nor a second "deauthorization" would give rise to the right of judicial review, regardless of the reasons for any of the Bureau's actions. The cycle could go on *ad infinitum,* the plaintiffs never receiving judicial review.

The Illinois case of *Pearce Hospital v. Illinois Public Aid Commission,* 15 Ill.2d 301, 154 N.E.2d 691 (1958) bears a striking similarity to this case. In *Pearce,* plaintiff, the owner of a private hospital that was on the lists of physicians and hospitals permitted to participate in the commission's medical aid program, was informed by the commission that the average admission rate and length of stay at the hospital was well above the state average, and that the plaintiff should take corrective measures within six months. Unsatisfied with plaintiff's effort to comply with the request, the defendant subsequently sent plaintiff a letter informing him that the state was dropping the hospital from its medical aid program rolls. *Id.* at 303, 154 N.E.2d at 693. The court found that although the decision was informal in nature, it was nonetheless a final disposition of plaintiff's rights and privileges with respect to participation in the tax-supported medical program, and was sufficient to support an action for review under the Illinois Administrative Review Act. *Id.* at 306, 154 N.E.2d at 694. Similarly in this case, the Bureau's letter of July 17, 1980, was a final disposition of NOE's rights and privileges to participate in the Bureau's rehabilitation program.

### III.

The Court affirms the dismissal of plaintiffs' action, on a finding that there was no final agency action, but for a reason totally different from that given by the Superior Court. It holds that plaintiffs have not exhausted their administrative remedies, an issue not raised at trial, and neither briefed nor argued. It is interesting to note that defendant, in its brief and at oral argument, agreed with plaintiffs that the July 17th letter of "deauthorization" constituted "final agency action." Defendant's argument to affirm the Superior Court dismissal is that, on the evidence presented to the trial court, defendant was entitled to an

**414** ■

affirmance of the Bureau's decision on the merits.

I consider the Court's conclusion of failure to exhaust administrative remedies to be mistaken. I fully concur with the Court's declaration that a party must exhaust his administrative remedies before he can turn to the courts for relief. But such is not the issue here.

Initially, it is important to note that the Rehabilitation Act, 22 M.R.S.A. §§ 3051–3067 (1980), provides for a fair hearing before the commissioner of human services and judicial review only for individuals applying for or receiving rehabilitation under the Act. *Id.* at § 3061. There are no provisions for hearings and judicial review for providers of facility services, such as NOE.

The Court grounds its determination of failure to exhaust administrative remedies on Step # 5, *Facility Use Approval* (set forth in part in the opinion) of the Bureau's casework manual. I submit that this part of the regulation has no application to the case before the Court.

Step # 5 is a part of the Bureau's casework manual, dated June, 1979, entitled "Procedure for Initiating BR Use of Rehabilitation Facility Services." After setting down five criteria for determining approval of a rehabilitation facility for VR use, the procedure sets forth six steps, entitled as follows:

Step # 1—Identification of Need for Facility Services

Step # 2—Verification of Facility's Intent to Provide VR Services

Step # 3—Analysis of Facility Data Prior to On-Site Visit

Step # 4—On-Site Facility Visit

Step # 5—Facility Use Approval

Step # 6—Facility Monitoring

It is readily apparent from reading all the steps, and particularly Step # 5, that the appeal to the Director relied upon by the Court applies only to the approval of the facility and not to a deauthorization of approval, which is the case before the Court. Step # 5(A) states that "[t]he Manager of CRU, with consultation from the BR Regional Director, shall decide whether or not to approve BR use of each of the programs or services which the facility offers." The appeal to the Director provided in Step # 5(C) refers directly to a disagreement on any of the three categories contained at Step # 5(B), none of which is involved here. In short, Step # 5(C) provides no appeal or hearing to the Director or to anyone else within the agency from a "deauthorization" decision.

Step # 6—*Facility Monitoring,* is the only part of the regulation which addresses the discontinuance of the approved use of the facility (deauthorization).[2] Subsection (B) of Step # 6 sets forth the procedure the Manager of the CRU will follow once he has held the meeting set forth in subsection (A), in reporting his decision to continue or discontinue the approved use of the facility. Step # 6 makes no provision for any appeal or hearing from a decision to discontinue authorized use of a facility.

While it can be argued that, if the Manager of CRU decided to continue the approved use of a facility under Step # 6(B) but set conditions for the continued use, the facility could appeal the decision to the Bureau Director under Step # 5(B)(3) & (C), no argument can be made that Step

**2.** Step # 6—*Facility Monitoring* provides in pertinent part:

A. Within one year of the decision to utilize the facility's services on behalf of BR clients and applicants, the Manager of CRU will convene a meeting of himself, the appropriate BR Regional Director(s), and the facility representative in order to determine the appropriateness of continued use of the facility.

\* \* \* \* \* \*

B. The Manager of CRU will, within one month of this meeting, forward a written report to the appropriate BR Regional Director(s) and the facility representative. This report will indicate:

1. The decision of the Manager of CRU to continue or discontinue the approved use of the facility.

2. The basis for this decision.

3. Any requirements or recommendations for continued use of the facility.

# 5 provides a facility, either specifically or by inference, with an appeal to the Director from a decision to discontinue approval of the use of a facility. Further, no appeal or hearing is authorized by any other Bureau rule or regulation.

It seems to me eminently clear that plaintiffs are provided with no further recourse, appeal or review within the agency from the deauthorization decision of the Bureau. Thus, they have exhausted all their administrative remedies; in fact, they have none to exhaust. Additionally, where as in this case, there are no provisions for hearing before the agency and, therefore, no opportunity to make a record, section 11006 of the APA provides for the taking of the necessary evidence by the reviewing court. This appears to be what the trial court did here, but it failed to decide the case.

I would accordingly vacate the judgment of the Superior Court and remand for further proceedings consistent with this opinion.