MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2024 ME 10
Docket:        Ken-22-418
Argued:        June 7, 2023
Decided:       January 30, 2024

Panel:         STANFILL, C.J., and MEAD, JABAR, HORTON, LAWRENCE, and DOUGLAS, JJ.

HANS UTSCH et al.

v.

DEPARTMENT OF ENVIRONMENTAL PROTECTION

STANFILL, C.J.

[¶1]  Hans Utsch and Julia H. Merck appeal from a judgment of the Superior Court (Kennebec County, *Stokes, J.*) denying their Rule 80C petition for judicial review of an email from the mining coordinator of the Department of Environmental Protection.  Because we conclude that the email that Utsch and Merck challenge is not a final agency action, we vacate the Superior Court's judgment and remand for dismissal of the petition.

## I.  BACKGROUND

### A.     Introduction

[¶2]  Harold MacQuinn, Inc., and its owner, Paul MacQuinn (collectively, MacQuinn), own some property in Hall Quarry, a neighborhood in the Town of Mount Desert.  A quarry was being operated on that property by 1967, but the

2

quarry ceased operations sometime thereafter. Starting around 2012, however, MacQuinn raised the possibility of restarting the quarry and reached out to the Department of Environmental Protection to see whether he needed any permits to do so.

[¶3] Quarry operations in Maine must comply with performance standards in order to prevent major impacts to wildlife habitat, groundwater, natural resources, roads, and waste. *See* 38 M.R.S. § 490-Z (2023). Those intending to operate a quarry must file a "notice of intent to comply" (NOITC) with these performance standards. *See* 38 M.R.S. § 490-Y (2023). Whether MacQuinn is required to file a NOITC is the subject of the email that Utsch and Merck challenge.

**B.    Events from 2012 to 2015**

[¶4] The following facts are drawn from the administrative record. *See Fair Elections Portland, Inc. v. City of Portland*, 2021 ME 32, ¶ 11 & n.3, 252 A.3d 504; *see also Francis Small Heritage Tr. v. Town of Limington*, 2014 ME 102, ¶ 2, 98 A.3d 1012.

[¶5] In June 2012, the mining coordinator of the Department's Bureau of Land Resources wrote to MacQuinn and advised him that he did not need a "permit" to comply with performance standards for excavations for his quarry.

*See* 38 M.R.S. §§ 490-W to 490-FF (2012).  Upon further inquiry, the mining coordinator clarified that because the quarry operated prior to 1970, MacQuinn did not need to file a NOITC with performance standards.

[¶6]  From 2012 to 2015, the mining coordinator responded to various inquiries from the Town of Mt. Desert, MacQuinn, and members of the public concerning whether MacQuinn needed to file a NOITC, and he consistently replied that a NOITC is not required because the Department's jurisdiction does not extend to quarries that pre-dated January 1, 1970.  He explained that the Site Location of Development Law (Site Law), enacted in 1970, grandfathered "any development in existence or in possession of applicable state or local licenses to operate or under construction on January 1, 1970" into the performance standards for quarries.  *See* P.L. 1969, ch. 571, § 2 (effective May 9, 1970) (codified at 38 M.R.S.A. § 488 (Supp. 1970)).  In 1995, the Legislature added small road quarries to the Site Law and created a separate article for performance standards for them.  *See* P.L. 1995, ch. 287, §§ 5, 18 (effective June 23, 1995) (codified at 38 M.R.S.A. §§ 488(16), 490-P to 490-V (Supp. 1995)).  These provisions expired on December 31, 1995, *see id.*, and the performance standards for quarries were then recodified in a different article.

4

*See* P.L. 1995, ch. 700, § 35 (effective July 4, 1996) (codified at 38 M.R.S.A. §§ 490-W to 490-EE (Supp. 1997)).

[¶7]   In March 2015, the mining coordinator learned that when the performance standards for quarries were recodified in a different article, the "prior to 1970" language was not integrated into that different article, but that language was part of the performance standards for excavations.  *Compare* 38 M.R.S. § 490-C (2012) (performance standards for excavations), *with* 38 M.R.S. § 490-Y (2012) (performance standards for quarries).   The performance standards for quarries stated that

> a person intending to create or operate a quarry under this article must file a notice of intent to comply before the total area of excavation of rock or overburden on the parcel exceeds one acre.

38 M.R.S. § 490-Y (2012).

[¶8]   The mining coordinator informed MacQuinn that a NOITC is required if the total area of excavation, including the area excavated before 1970, exceeded one acre.  In response, MacQuinn modified its excavation plan so that the total area excavated would not exceed one acre.  The mining coordinator thereafter confirmed that MacQuinn's modified plan did not trigger the one-acre threshold for a NOITC.  Following the mining coordinator's determination, the mining coordinator responded to several inquiries

regarding the quarry and continued to maintain that MacQuinn's plan did not trigger the one-acre threshold for a NOITC.

## C.    Events occurring from 2015 to 2021

[¶9]  In 2017, the Legislature passed "An Act to Make Minor Changes and Corrections to Statutes Administered by the Department of Environmental Protection."   P.L. 2017, ch. 137.   This act added temporal language to the performance standards for quarries, and the statute now provides that

> a person intending to create or operate a quarry under this article must file a notice of intent to comply before the total area of excavation of rock or overburden on the parcel exceeds one acre *excavated since January 1, 1970*.

*Id.* § A-11 (codified at 38 M.R.S. § 490-Y (2017)) (emphasis added).

[¶10]   In 2020, some area residents again contacted the Department, arguing that MacQuinn's proposed area for the quarry exceeded one acre and thus a NOITC was required.   The Department disagreed and explained that under 38 M.R.S. § 490-Y, the area excavated before January 1, 1970, did not count toward the one-acre threshold to trigger the requirement of a NOITC. Therefore, no NOITC was required because 0.88 acres, *see infra* n.1, of MacQuinn's proposed activity must be subtracted from the entire area of activity, leaving the area under the one-acre threshold.

6

**D.    The 2021 email**

[¶11]  On March 29, 2021, Utsch and Merck, who own a home located across Somes Sound from the quarry, sent a letter via email to the mining coordinator requesting that the Department "require that Harold MacQuinn, Inc. ('MacQuinn') must submit to [the Department] a Notice of Intent to Comply (NOITC) pursuant to 38 M.R.S. § 490-Y before proceeding with MacQuinn's plan to restart operation of Hall Quarry in Mount Desert."  In the letter, Utsch and Merck contend that MacQuinn excavated an area of the quarry after 1970, and that section 490-Y "does not include any provision for 'grandfathering' of pre-1970 excavated areas that are again excavated after 1970."

[¶12]  On April 15, 2021, the mining coordinator responded by email to Utsch and Merck's letter, stating that MacQuinn did not need to file a NOITC and citing 38 M.R.S. § 490-Y. The mining coordinator explained that the Department believes the area excavated after 1970 is being used as stockpile or grout storage and is outside the area MacQuinn wishes to excavate.  The Department further explained that even if MacQuinn were proposing to use the post-1970 excavated area, it is below the one-acre threshold to require a NOITC.[1]  He

---

[1]  The mining coordinator explained the following.  MacQuinn proposes to excavate 1.024 acres, and only 0.144 acres count towards the one-acre threshold to trigger a NOITC because 0.88 acres

concluded the email by stating that, unless any new information were to become available, the matter was closed.

## E. Procedural History

[¶13] On May 13, 2021, Utsch and Merck filed a "Petition for Review of Final Agency Action or Failure to Act," seeking review of the mining coordinator's email. *See* M.R. Civ. P. 80C(a). Utsch and Merck claimed that they had standing to bring the petition because they live near the quarry and will be affected by the noise when the quarry is in operation. They alleged that the Department "violated statutory provisions, exceeded its statutory authority, committed errors of law, and/or abused its discretion" by determining that MacQuinn does not have to file a NOITC before operating the quarry. *See* 5 M.R.S. § 11007(4)(C)(1), (2), (4), (6) (2023).

[¶14] MacQuinn was not named as a party by Utsch and Merck, but nonetheless opposed their petition as a "party in interest." The Department and MacQuinn asserted that the mining coordinator's April 15 email is not a final agency action and that Utsch and Merck lack standing to seek review of the mining coordinator's decision. Utsch and Merck maintained that the email was

---

were excavated before January 1, 1970. The area excavated post-1970 is 0.51 acres. 0.144 acres plus 0.51 acres equals about 0.65 acres, which is still below the one-acre threshold required for a NOITC.

8

subject to review under Rule 80C or, in the alternative, the complaint could be construed as a declaratory judgment action.

[¶15] On September 27, 2022, following oral argument, the Superior Court (Kennebec County, *Stokes, J.*) denied Utsch and Merck's 80C petition, or in the alternative, any request for declaratory relief. Although the court concluded that the April 15 email was a final agency action and that Utsch and Merck had standing to appeal it, the court agreed with the Department's interpretation that any areas excavated before January 1, 1970, are grandfathered. Utsch and Merck timely appealed the court's decision. M.R. App. P. 2B(c)(1); M.R. Civ. P. 80C(m); 5 M.R.S. § 11008 (2023). The State timely cross-appealed, primarily on the threshold issues of standing and final agency action. *See* M.R. App. P. 2C(a)(2).

## II. DISCUSSION

### A. Final Agency Action under the Maine Administrative Procedure Act

[¶16] We review de novo whether the mining coordinator's email was a "final agency action" such that the Superior Court had jurisdiction to review it. *Tomer v. Me. Hum. Rts. Comm'n*, 2008 ME 190, ¶¶ 9-11, 962 A.2d 335; *see*

5 M.R.S. § 8002(4) (2023); M.R. Civ. P. 80C(a).[2]  The Maine Administrative

Procedure Act (APA) provides the Superior Court with jurisdiction to hear

petitions for review of a "final agency action."[3]  *See* 5 M.R.S. § 11001(1) (2023);

*Brown v. Dep't of Manpower Affs.*, 426 A.2d 880, 883-84 (Me. 1981).

[¶17]  The APA defines "final agency action" as "a decision by an agency

which affects the legal rights, duties or privileges of specific persons, which is

dispositive of all issues, legal and factual, and for which no further recourse,

appeal or review is provided within the agency."  5 M.R.S. § 8002(4) (2023); *see*

*also Brown*, 426 A.2d at 883 (discussing the scope of judicial review of final

agency actions).  A final agency action is not "limited to strictly adjudicatory"

proceedings, *Brown*, 426 A.2d at 883, meaning that "[a]s long as all questions

---

[2] Although there are very limited circumstances in which one may seek judicial review of a non-final agency action (or seek review without exhausting administrative remedies, *see infra* note 4), none are applicable here.  *See* 5 M.R.S. § 11001(1) (2023) (stating that non-final action may be reviewable if "review of the final agency action would not provide an adequate remedy"); *see also Ne. Occupational Exch., Inc. v. Bureau of Rehab.*, 473 A.2d 406, 410 (Me. 1984) ("[R]eview of nonfinal agency action should be undertaken only when the parties face the prospect of irreparable injury, with no practical means of procuring effective relief after the close of proceedings." (quotation marks omitted)); *Churchill v. S. A. D. No. 49 Tchrs. Ass'n*, 380 A.2d 186, 190 (Me. 1977) (outlining other exceptions such as "where the questions involved are questions of law [which only] the courts must ultimately decide" or "where the administrative agency is not empowered to grant the relief sought and it would be futile to complete the administrative appeal process").

[3] "[A]ny person aggrieved by any order or decision of the board or commissioner may appeal to the Superior Court," provided that the appeal comports with the Administrative Procedure Act. 38 M.R.S. § 346(1).  The Administrative Procedure Act provides that parties may seek an advisory ruling or an informal staff opinion from an agency, though such a ruling or opinion is neither binding nor appealable. *See* 5 M.R.S. § 9001(1)-(4) (2023); 06-096 C.M.R. ch. 2, § 4(c) (effective Oct. 19, 2015) ("Advisory rulings are not appealable to the Board and are not final agency action.").

10

necessarily involved in the underlying subject matter are resolved, a review of that matter is not necessarily inappropriate," *Wheeler v. Me. Unemployment Ins. Comm'n*, 477 A.2d 1141, 1146 (Me. 1984).[4] Thus, once the agency has completed its decision-making process and determined rights or obligations, its decision is appealable as a final agency action. *See* 5 M.R.S. § 8002(4); *see also Bailey v. Dep't of Marine Res.*, 2015 ME 128, ¶¶ 5-6, 124 A.3d 1125 (concluding that the Department of Marine Resources' issuance of an elver transaction card was a final agency action); 1 M.R.S. § 409(1) (2023) (stating that "a refusal or denial to inspect or copy a record" is a final agency action pursuant to the Freedom of Access Act that can be appealed); 06-096 C.M.R. ch. 2, § 24 (effective Oct. 19, 2015) (outlining the process for appealing the Department of Environmental Protection commissioner's final licensing decisions).

[¶18] The mining coordinator's email is not a final agency action. It did not affect anyone's "legal rights, duties or privileges." 5 M.R.S. § 8002(4).

---

[4] Before a party can turn to courts for relief, that party must first exhaust all administrative remedies before the relevant administrative agency. *Ne. Occupational Exch., Inc.*, 473 A.2d at 408-09. The exhaustion principle allows agencies to "correct their own errors, clarify their policies, and reconcile conflicts before [an aggrieved party] resort[s] to judicial relief." *Id.* at 409 (quotation marks omitted). It also allows the reviewing court to have a complete record to be able to effectively review the administrative action. *Id.* The administrative agency should have "every opportunity to resolve a matter in its area of special competence before its actions become subject to judicial review." *Id.* at 410.

Although Utsch and Merck may be "interested" in whether a NOITC is required, 5 M.R.S. § 9001(1); *see* 06-096 C.M.R. ch. 2, § 4, their legal rights, duties, or privileges are not affected by the email. Moreover, the mining coordinator's email cannot affect or be dispositive of MacQuinn's "legal rights, duties or privileges" to operate the quarry when MacQuinn was not even involved in the action, i.e., the email. *See* 5 M.R.S. § 8002(4), (8) (explaining that final agency action is a decision that affects "specific persons"); *see, e.g.*, *Sinclair Wyo. Refin. Co., LLC v. U.S. Env't Prot. Agency*, 72 F.4th 1137, 1143-45 (10th Cir. 2023) (concluding an email was not a final agency action because the email did not determine any rights); *AT&T Co. v. E.E.O.C.*, 270 F.3d 973, 975-76 (D.C. Cir. 2001) (stating that "Letters of Determination" threatening a lawsuit "fall short of final agency action"); *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13-17 (D.C. Cir. 2005) (explaining that survey results are not final agency action, because the survey results did not bind the agency); *Goethel v. U.S. Dep't of Com.*, 854 F.3d 106, 114-16 (1st Cir. 2017) (characterizing, for purposes of time limits for an appeal, an agency's email notification of an agency order as an unreviewable agency action because the notification did not result from an agency adjudication).

12

[¶19] Finally, the statute and the Department's regulations make clear that an action is appealable only if it is made by the board or the commissioner. 38 M.R.S. § 346(1); 06-096 C.M.R. ch. 2, § 28. Here, the email was from the mining coordinator, and thus was not final agency action as defined in the statute. The email is simply advisory in nature, unreviewable under the APA and Rule 80C.[5]

## B. Declaratory Judgment Action

[¶20] Utsch and Merck argue in the alternative that their Rule 80C petition should be treated as a declaratory judgment action. We observe that the only count asserted in the complaint is for review of final agency action. There is no stated claim for a declaratory judgment. Utsch and Merck never sought to amend the complaint under M.R. Civ. P. 15, nor did they seek to add MacQuinn as a necessary party under M.R. Civ. P. 19.

[¶21] While we have occasionally treated a petition for judicial review of an agency action as one for declaratory judgment, we have done so only in very limited circumstances and in the interest of judicial economy. *See La Bonta v.*

---

[5] Although the email is advisory in nature, we note that Utsch and Merck did not in their letter formally request an advisory ruling or an informal staff opinion. *See* 5 M.R.S. § 9001(1)-(4). That is of no moment, because even if the email was an advisory ruling or an informal staff opinion issued in accordance with the statute, it would not be appealable. *See* 5 M.R.S. § 9001(1)-(4); 06-096 C.M.R. ch. 2, § 4(c) ("Advisory rulings are not appealable to the Board and are not final agency action.").

*City of Waterville*, 528 A.2d 1262, 1264 (Me. 1987) (explaining that a dismissal of the 80B appeal "would serve no purpose whatever, would unjustifiably elevate form over substance, and would waste judicial resources as well as the resources of the parties"). We have treated a petition for judicial review as a declaratory judgment action when that was the relief actually sought and it was within the jurisdiction of the court. For example, in *Hurricane Island Foundation v. Vinalhaven*, the plaintiff sought review under Maine Rule of Civil Procedure 80B of the town tax assessor's denial of a tax exemption. 2023 ME 33, ¶ 3, 295 A.3d 147. Addressing whether direct review was available under Rule 80B or required a declaratory judgment action, we said, "We need not determine whether review under Rule 80B is 'otherwise available by law' under one of the extraordinary writs" because "the court nonetheless has jurisdiction when the complaint may fairly be treated as a complaint for declaratory judgment." *Id.* at ¶ 13 (quoting M.R. Civ. P. 80B(a)); *see also La Bonta*, 528 A.2d at 1263-64 (noting that the "clearly defined issue" of the validity of an ordinance "was fully and fairly tried in Superior Court" regardless whether it was appropriately an action under Rule 80B or a declaratory judgment action).

[¶22]   The Declaratory Judgments Act (DJA) does not enlarge the jurisdiction of the courts.  See 14 M.R.S. § 5953 (2023) ("Courts . . . *within their respective jurisdictions* shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed." (emphasis added)); *Walsh v. City of Brewer*, 315 A.2d 200, 210 (Me. 1974); *Capodilupo v. Town of Bristol*, 1999 ME 96, ¶ 4, 730 A.2d 1257.  On appeal, we may consider whether the Superior Court had subject matter jurisdiction even if the issue was not raised in the Superior Court.  *See Walsh*, 315 A.2d at 210-11; *cf. Sold, Inc. v. Town of Gorham*, 2005 ME 24, ¶ 10, 868 A.2d 172 ("A declaratory judgment action cannot be used to create a cause of action that does not otherwise exist.").

[¶23]  The DJA provides:

> Any person . . . whose rights, status or other legal relations are affected *by a statute*, municipal ordinance, contract or franchise may have determined any *question of construction* or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

14 M.R.S. § 5954 (2023) (emphasis added).  We have indicated that the DJA "gives plaintiffs whose rights *are affected* the right to bring declaratory action." *Blanchard v. Town of Bar Harbor*, 2019 ME 168, ¶ 19, 221 A.3d 554.

[¶24]   The DJA "may be invoked only where there is a genuine controversy." *Id.* ¶ 20 (quotation marks omitted); *see Wagner v. Sec'y of State*, 663 A.2d 564, 567 (Me. 1995). We have explained that "[a] genuine controversy exists if a case is ripe for judicial consideration and action." *Patrons Oxford Mut. Ins. Co. v. Garcia*, 1998 ME 38, ¶ 4, 707 A.2d 384.  A case is ripe if it satisfies two prongs: "(1) the issues must be fit for judicial review, and (2) hardship to the parties will result if the court withholds review." *Blanchard*, 2019 ME 168, ¶ 20, 221 A.3d 554.

[¶25]   Utsch and Merck's petition for judicial review was not ripe for consideration as a declaratory judgment action because it fails both prongs required for ripeness.  First, their petition is not fit for review because there is no certain or immediate legal problem that will directly and continuously impact them.  *See Marquis v. Town of Kennebunk*, 2011 ME 128, ¶ 18, 36 A.3d 861, 866; *Johnson v. City of Augusta*, 2006 ME 92, ¶ 7, 902 A.2d 855.  Utsch and Merck's allegations are too uncertain as to the extent that future quarrying activity that might occur and might be audible at their home across Somes Sound.  *See, e.g., Pilot Point, LLC v. Town of Cape Elizabeth*, 2020 ME 100, ¶ 31, 237 A.3d 200; *Blanchard*, 2019 ME 168, ¶ 21, 221 A.3d 554.  MacQuinn's quarry has not operated for several years, and it is unclear when or if it will

16

begin operating.[6]  Accordingly, we cannot conclude that, because of the mining coordinator's email, any noise generated by any future quarrying activity is a certain and immediate threat that will directly and continuously impact Utsch and Merck.

[¶26]  Second, Utsch and Merck have not established a sufficient "hardship."  We have explained that "the hardship prong requires adverse effects on the plaintiff, . . . and speculative hardships do not suffice to meet the requirement."  *Blanchard*, 2019 ME 168, ¶ 22, 221 A.3d 554 (alteration and quotation marks omitted); *see Johnson*, 2006 ME 92, ¶ 8, 902 A.2d 855.  Even though the quarry has not operated for some time, Utsch and Merck allege that they will be able to hear quarrying activity from their residence across Somes Sound.  This alleged harm is too speculative and concerns a future adverse consequence that may or may not occur.  *See Blanchard*, 2019 ME 168, ¶ 19, 221 A.3d 554 (concluding that the declaratory judgment action was not ripe because the "the property owners' rights, status or other legal relations are not yet affected" (quotation marks omitted)).  "In simple terms, [their] situation

---

[6] The parties indicated at oral argument that there has been a moratorium on quarrying activities in the Town and that MacQuinn still needed approval from the local planning board before operating the quarry.

before and after our review would remain the same, thus rendering this challenge . . . not ripe for judicial review." *Id.* ¶ 22.

[¶27] Because there is not a justiciable controversy, we do not consider whether Utsch and Merck have standing. *See Tomer*, 2008 ME 190, ¶ 16, 962 A.2d 335. We vacate the Superior Court's judgment and remand for dismissal of the complaint for lack of jurisdiction. *See id.* ¶ 14.

The entry is:

> Judgment vacated. Remanded to the Superior
> Court for dismissal of the petition for judicial
> review.

---

Matthew D. Manahan, Esq., and Joshua D. Dunlap, Esq. (orally), Pierce Atwood LLP, Portland, for appellants Hans Utsch and Julia H. Merck

Aaron M. Frey, Attorney General, Robert L. Martin, Asst. Atty. Gen. (orally), and Margaret A. Bensinger, Asst. Atty. Gen., Office of the Attorney General, Augusta, for cross-appellant Department of Environmental Protection

Edmond J. Bearor, Esq., and Jonathan P. Hunter, Esq. (orally), Rudman Winchell, Bangor, for appellee Harold MacQuinn, Inc.

Kennebec County Superior Court docket number AP-2021-20
FOR CLERK REFERENCE ONLY