■ In the Matter of ALBANY SPECIALTIES, INC., Respondent, v COUNTY OF ORANGE, Appellant, and BUILDING AND CONSTRUCTION TRADES COUNCIL OF ORANGE COUNTY, Intervenor-Appellant. [662 NYS2d 773] —In a hybrid proceeding pursuant to CPLR article 78, *inter alia,* to prohibit the County of Orange from accepting bids for a project known as the Orange County Court Facilities Project under the present form of the contract documents and an action for a judgment declaring a certain Project Labor Agreement incorporated in the bid specifications for the Orange County Court Facilities Project illegal and unenforceable, the County of Orange and the Building and Construction Trades Council of Orange County separately appeal, as limited by their respective briefs, from so much of a judgment of the Supreme Court, Orange County (Leavitt, J.), dated April 17, 1997, as granted the petition and declared the Project Labor Agreement unlawful.

Ordered that the judgment is reversed insofar as appealed from, on the law, with one bill of costs, the Project Labor Agreement is declared to be lawful and enforceable, the petition is denied, and the proceeding is dismissed on the merits.

The petitioner, a corporate entity which bids on and performs public works construction contracts, is a self-described "merit shop company, whose current employees have elected not to be represented by organized labor unions". The petitioner commenced this hybrid CPLR article 78 proceeding and action to declare unlawful a certain Project Labor Agreement (hereinafter PLA) adopted by the County of Orange (hereinafter the County) for use on a County project involving the construction

and renovation of court and government facilities in Goshen, New York, and to prohibit the County from accepting bids for the project. After the relevant issues were narrowed by a stipulation of the parties, the Supreme Court, *inter alia*, granted the petition and declared the PLA unlawful and unenforceable as violative of the competitive bidding policy and laws of New York (*see*, General Municipal Law §§ 100-a, 103), as well as contrary to controlling decisional law. We reverse and declare the PLA to be lawful and enforceable.

The validity of the PLA in issue is governed by the recent decision in *Matter of New York State Ch., Inc., Associated Gen. Contrs. v New York State Thruway Auth.* (88 NY2d 56, 69), in which the Court of Appeals determined that a PLA is permissible where the record supports the conclusion that "the decision to enter into the PLA had as its purpose and likely effect the advancement of the interests embodied in the competitive bidding statutes". The Court of Appeals further identified the "two central purposes" of the competitive bidding statutes as "(1) protection of the public fisc by obtaining the best work at the lowest possible price; and (2) prevention of favoritism, improvidence, fraud and corruption in the awarding of public contracts" (*Matter of New York State Ch., Inc., Associated Gen. Contrs. v New York State Thruway Auth., supra,* at 68).

Upon an examination of the record, we are satisfied that the PLA negotiated by the County's construction manager, Nelson Meek & Associates, Inc. (hereinafter NMA), with the intervenor Building and Construction Trades Council of Orange County satisfied the foregoing requirements. Indeed, NMA's principal, Nelson W. Meek, conducted an analysis of the potential advantages of utilizing a negotiated PLA for the court facilities project. His resulting letter report set forth a number of factors strongly favoring the use of the negotiated PLA. His findings indicated that (1) union labor was used in 80% to 85% of the construction projects performed for the New York State Department of Transportation in the region, and that "the labor history experience in the Hudson Valley/Orange County region is overwhelmingly inclined towards the utilization of a union work force"; (2) other construction jobs in the area had experienced significant delays and disruptions from local labor unions when using nonunion workers, even where the amount of on-site work performed was minimal; (3) the inclusion of a no-strike clause in the PLA would negate the possibility of strike-induced delays which could disrupt the abbreviated time schedule of the project and thereby imperil the availability of as much as $29,000,000 in New York State funds while at the

same time having a negative impact upon the orderly and expeditious administration of judicial operations in the County; (4) the elimination of potential labor unrest through the utilization of the PLA would avoid costs occasioned by the payment of fixed fees of $41,400 per month, representing the sum which the County was obligated to pay to the construction manager and the architect for the project; and (5) the PLA would secure otherwise unavailable price advantages by permitting the designation of working forepersons and by excluding traditional morning and afternoon "breaks" from the project workday, resulting in a savings of as much as $2,111,250 over the life of the project. This report, prepared contemporaneously with the negotiation and execution of the challenged PLA, is not the sort of "*[p]ost hoc* rationalization" for the adoption of a PLA disapproved in *Matter of General Bldg. Contrs. v Dormitory Auth.* (88 NY2d 56, 75). Rather, it closely comports with the requirements set forth in *Matter of New York State Ch., Inc., Associated Gen. Contrs. v New York State Thruway Auth. (supra),* by focusing on the public fisc, considering the local labor history, and tailoring the PLA to meet the specific needs and timetable of the court facilities project. These factors, coupled with the statement of reliance thereon in Article I of the PLA itself and the absence of any provisions in the PLA which discriminate against nonunion contractors, demonstrate that the adoption of the PLA in this case advances the goals of New York's competitive bidding statutes.

The mere fact that Meek's letter report bears a strong resemblance to an earlier letter report prepared by him analyzing the use of a PLA for a project involving construction of the Orange County Correctional Facility does not render it invalid or suspect. Indeed, the similarities between the two reports were inevitable given the closeness in time and location of the two projects and the common labor market to be drawn upon for both. Moreover, contrary to the finding of the Supreme Court, the recommendation of the letter report to utilize a PLA, *inter alia*, in order to avoid potential labor unrest does not suggest a "capitulation to extortion". Rather, the avoidance of delays and work stoppages occasioned by labor strife has been recognized as a valid and legitimate consideration in determining whether to enter into a PLA (*see, Matter of New York State Ch., Inc., Associated Gen. Contrs. v New York State Thruway Auth., supra,* at 70, 75). There is no indication that the prospect of labor unrest was given undue weight in this case, nor do we find the conclusions set forth in the letter report wholly speculative and unsubstantiated.

Accordingly, inasmuch as the County undertook an adequate

consideration of the relevant factors, and the record supports the conclusion that its decision to utilize the subject PLA will advance the purposes of New York's competitive bidding laws, we determine that the PLA is lawful and enforceable. O'Brien, J. P., Sullivan, Altman and McGinity, JJ., concur.