Hinkle, J.
The plaintiff contractors seek to enjoin defendant City of Boston from requiring bidders to enter into a bid specification called a Project Labor Agreement (“PLA”)[2] as a condition for work on renovations and additions to East Boston High School (“the Project”).
Plaintiffs allege that they are being penalized for their non-union status and effectively prevented from submitting a bid or receiving the award of a contract for work on the Project as the result of the restrictions imposed by the Project Labor Agreement. The plaintiffs also allege that the City has failed to comply with procedures set forth in its own Executive Order which allows for PLAs only after “thorough investigation and analysis” by a Project Labor Committee. The defendant contends that its bid specifications are within its authority under the applicable Massachusetts public bidding statute, G.L.c. 149, §§44A-J, 44M.
For the reasons set forth below, after hearings held on March 23, March 25, and March 30, 1998, review of the complaint, answer, affidavits and stipulated facts, the plaintiffs’ application for a preliminary injunction is ALLOWED.
FINDINGS OF FACT[3]
1.The plaintiffs are all Massachusetts corporations. Methuen Construction Company is primarily engaged in the general contracting business. The other plaintiffs are primarily engaged in the electrical contracting business. Each plaintiff is experienced in public building construction and is qualified to work on the Project. Each plaintiff would be required to provide a bid deposit, typically in the form of a bid bond, in the amount of 5% of its bid as a condition of bidding. Therefore, each claims it would risk its bid bond if it bid for work on the Project with no intention of signing the PLA. Each plaintiff has performed numerous public construction projects not governed by PLAs, and each has demonstrated its ability to provide employees who can work in harmony with all other employees, including those provided by union contractors.
2. On December 8, 1997, the City initially invited bids for work in connection with the Project. On January 8, 1998 bidders were notified that the deadline for submission of filed sub-bids was extended from January 14, 1998 to January 26, 1998, and the deadline for submission of general bids was extended from February 4, 1998 to February 11, 1998. On January 13, 1998, bidders were notified that submission of filed sub-bids was extended from January 26, 1998 to January 29, 1998.
3. On January 26, 1998, the City’s PLA Committee ratified the use of the PLA on the Project. On that same day bidders were notified that the Project had been cancelled, and that the Project would be redesigned and bids solicited by public advertisement at a later date.
4. On February 23, 1998, the City invited bids for the Project for a second time. On March 12, 1998, sub-bids for the Project were opened. On March 24, 1998, bidders were notified that the deadline for submission of general bids was extended from March 2, 1998 to April 1, 1998.
5. At the time of this Memorandum of Decision, Boston has not awarded any contracts for the Project.
6. The Project cost is expected to be $24,632,000, which makes it the largest school construction project in the City’s history. The Project will include a new gymnasium addition for the East Boston High School, site improvement, and extensive renovation of the existing building, including seismic upgrades, a new elevator and a new roof. Eighteen categories of bids are involved in the Project.
7. As required by G.L.c. 149, §44B, the City prepared separate bid documents, primarily plans and specifications for the Project. The bid documents include an Executive Order for Project Labor Agreements on City Construction Projects (the “Executive Order”) dated September 1, 1997 and issued by Mayor Thomas M. Menino. The bid documents also include a form of a Project Labor Agreement negotiated over several months between the City and various unions and executed by the Signatory Unions on or about September 1, 1997.
8. The Executive Order provides in pertinent part:
The decision to require a Project Labor Agreement for a major public construction project will be made by the City on a project-by-project basis where the City has determined based on thorough investigation and analysis that the use of a Project Labor Agreement will benefit and enhance the interests of the City. Factors to be considered may include, without limitation, cost, efficiency, quality and/or safety, the principles of competitive bidding, expanded opportunities for minorities, females and Boston residents and other City policies and laws. The City’s decision will be made in accordance with *327 City policies, legal requirements and any or all of the following standards:
a. A Project Labor Agreement will not be appropriate unless the number and mix of different crafts, trades, contractors, and subcontractors render the project of sufficient complexity to warrant a project labor agreement;
b. A Project Labor Agreement will only be appropriate for projects historically recognized as construction work;
c. A Project Labor Agreement will only be appropriate where the nature of the project, including without limitation such factors as location, environmental impact, relevant court orders or other legal requirements, duration and deadlines for completion, is such to warrant a project labor agreement.
9. The Executive Order calls for the creation of a special committee called the “Project Labor Committee” which is responsible for, among other things, investigation and recommendations concerning the propriety of PLAs on City projects. The PLA Committee met once, on January 26, 1998, to “ratify” the requirement of the PLA in the Project bid specification. The treatment of the Project at that meeting was perfunctory. The Committee conducted no analysis or evaluation of the reasons for using a PLA on the Project. Before the meeting, PLA Committee members received a Construction Project Information Sheet (“the Information Sheet”) regarding renovation of the East Boston High School. Committee members had no other material information about the applicability of the PLA for this Project before their vote.
10. The PLA involved in this case requires all contractors and subcontractors on the Project to agree to be bound by the collective bargaining agreements of the Signatory Unions,[4] as well as other union rules. Among the provisions of the PLA are the following:
(a) All contractors are required to sign and become bound by the terms of the PLA as a condition of award of work on the Project. Article 11(b).
(b) The PLA incorporates by reference the local collective bargaining agreements of the Signatory Unions. Article II, Section 3.
(c) Contractors who sign the PLA must recognize the union as the sole and exclusive bargaining representative of all craft employees on the Project. Article III, Section 1.
(d) All workers, except one foreman, must be referred to each Contractor by the local union. Article III Section 2.
(e) All employees on the Project must join the union. Article III, Section 4.
(f) The procedure for contractors’ selection of foremen may be affected by provisions of the relevant union’s collective bargaining agreement. Also, in selecting foremen, contractors must “give primary consideration to qualified individuals within the jurisdiction” of the relevant union, with certain limitations. Article III, Section 8.
(g) Each contractor must give site access to union representatives and must recognize the authority of union stewards. Article IV.
(h) Each contractor must submit to union dispute and grievance procedures. Article VII.
(i) Each contractor must contribute to established union benefit funds. Article IX, §2.
(j) Each contractor must employ union apprentices. Article XI.
11. On January 20, 1998, an earlier action was filed in this court, Methuen Constr. Co. v. Boston, Civil Action No. 98-0287, involving the same project, parties and issues. After the action was filed, the City withdrew its bid solicitation requiring a PLA because it determined that it had not complied with the requirements set forth in the Executive Order.
12. Before this Project, the City had required a PLA as a condition of bidding on one other school project, a renovation to South Boston High School costing approximately five million dollars. In addition, the City initially required a PLA on a project similar in magnitude to this Project, involving renovation of Hyde Park High School, which also involved accreditation needs. The present plaintiffs challenged that PLA in an action in this Court, Civil Action No. 97-6645, filed December 15, 1997. Before any ruling on the request for injunctive relief, the City voluntarily withdrew the PLA requirement for the Hyde Park project, and that project is proceeding without a PLA.
13. Although the City has not yet awarded any contracts on this Project, nonunion contractors have submitted bids in six of the filed sub-bid categories. Nonunion contractors were apparent low bidders in three of those categories.[5]
14. East Boston High School, like most high schools in New England, is subject to accreditation by the New England Association of Schools and Colleges (“NEASC”). Accreditation indicates that a school has met certain criteria with regard to facilities, staff, administration, curriculum and educational instruction. Loss of accreditation can be detrimental to college admission.
15. In 1993, a Visiting Team of NEASC began an accreditation review of East Boston High School. The Visiting Team physically evaluated the High School in March of 1994. On September 30, 1994, the NEASC forwarded to the Headmaster the áccreditation report for East Boston High School. The NEASC placed the high school on probation “based on its failure to adhere to the Commission’s standards for accreditation on school facilities, educational media services and student services.” The NEASC report cited specific issues which it requested be immediately addressed: handicap accessibility, heating system repairs, li *328 brary/media center modernization, increase in library portfolio and an increase in student guidance services. The school was requested to provide a timeline for this work on or before July 1, 1995.
16. The scope of the present Project exceeds the problems the high school was required to address by the accrediting association. The Project now includes renovation of the entire school structure and addition of a new wing. NEASC has agreed to delay taking action on the school’s accreditation status until the fall of 1999, after the present Project is scheduled to be completed.
17. In order to obtain state funding for the Project, construction is required to begin by the summer of 1998.[6] Scheduling is complicated by the need to work around the high school’s academic schedule. Consequently, the Project will be completed in phases, and certain work, such as asbestos removal, must be done over the summer or during school vacations.
DISCUSSION
The plaintiffs argue that the defendant should be enjoined from requiring as a bid specification that all contractors working on the Project agree to enter the Project Labor Agreement because this requirement violates the Massachusetts competitive bidding statutes by restricting competition and arbitrarily favoring unions in the award of the construction contract. The challenged bid specification raises important and complex issues regarding PLAs that the appellate courts of the Commonwealth have not addressed.[7]
As a threshold matter, the defendant contends that the plaintiffs lack standing to challenge its bid specification. On this issue, I find and rule that the plaintiffs have standing to pursue their claims; they have alleged injury, and, absent their challenge, the legitimacy of this Project Labor Agreement could not be addressed. See Northern Ohio Chapter of Associated Builders & Contractors, Inc. v. Gateway Economic Dev. Corp. of Greater Cleveland, 1992 WL 119375 at 6, 7 (N.D.Ohio) (contractors who did not place bids on public works project because of requirement that they enter a PLA had standing to contest project labor agreement because they lose the opportunity to compete for the project since they will not agree to enter the PLA); Doric Building Assocs. v. Department of Labor and Industries, 27 Mass.App.Ct. 1175, 1177 (1989) (although not question before it, the Court expressed its belief that a nonbidding contractor could bring suit against an awarding authority if the contractor alleged that an illegitimate action of the awarding authority prevented it from bidding).
The standard for obtaining a preliminary injunction is well-settled. The moving party must demonstrate that without the requested relief it would suffer irreparable harm, not capable of remediation by a final judgment in law or equity. Commonwealth v. Massachusetts CRINC, 392 Mass. 79, 87 (1984); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 n. 11 (1980). The moving party must also show a likelihood that it would prevail on the merits of its claim at trial. Massachusetts CRINC, 392 Mass. at 87. The court must then balance these two factors against the showing of irreparable harm which would ensue from the issuance or denial of an injunction and the “chance of success on the merits” presented by the opposing party. Massachusetts CRINC, 392 Mass. at 87; Packaging Indus. Group, Inc., 380 Mass. at 616-17. When the balance of hardship measured in light of the merits favors the moving party, it is entitled to a preliminary injunction. Massachusetts CRINC, 392 Mass. at 87-88; Packaging Indus. Group, 380 Mass. at 617. Additionally, where, as here, the dispute is not between private parties, the court should consider whether granting injunctive relief is consistent with the public interest. Massachusetts CRINC, 392 Mass. at 89.
Absent entry of the injunction, the plaintiffs in this case would lose the opportunity of working on the Project because they would be required to conform to various union practices and would be limited in their autonomy to negotiate employment with nonunion workers. In effect, under the PLA the plaintiffs, as nonunion contractors, would have to relinquish control over the terms of employment for their employees, without the benefit of having participated in collective bargaining. This showing constitutes irreparable harm. See Quincy Ornamental Iron Works, Inc. v. Findlen, 353 Mass. 85, 90 (1967) (plaintiff entitled to injunctive relief because a showing that it could have been awarded bid was “a sufficient proprietary interest to justify injunctive relief’); Glenwood Bridge, Inc. v. Minneapolis, 940 F.2d 367, 371-72 (8th Cir. 1991) (although plaintiff could receive money damages for lost opportunity to receive bid for public works project, irreparable harm exists because of the otherwise unprotected interest in participating in a legal bidding process and the awarding of a legal contract).
I turn now to the issue of plaintiffs’ likelihood of success on the merits of their claims. The plaintiffs initially contend that the City has no authority to require a PLA because PLAs are per se violations of the Massachusetts competitive bidding statutes. I disagree. The issue of a public awarding authority’s ability to require parties in the Commonwealth to enter into a PLA as a condition of working on a project was upheld by this court (Garsh, J.) in Utility Contractors Ass’n of New England, Inc. v. Commissioners of the Mass. Dep’t of Pub. Works, Civil Action 90-3035, 5 Mass. L. Rptr. 17 (Suffolk Super. 1996) (“UCANE”).[8]
Following Judge Garsh’s reasoning, I find and rule that the City of Boston has the authority to require project labor agreements. All parties, however, agree *329 that the City may not exercise its authority arbitrarily or capriciously in requiring PLAs. See Modern Continental Constr. Co. v. Massachusetts Port Auth., 369 Mass. 825, 829 (1976); see UCANE, Civil Action No. 90-3035 at 18-20; see also Rudolph v. City Manager of Cambridge, 341 Mass. 31, 34-35 (1960), citing Slocum v. Medford, 302 Mass. 251, 254 (1939).
Courts have a limited role to play in reviewing the actions of municipal government. Courts should intervene in those actions only in the rare circumstance where municipal policy constitutes arbitrary or unreasonable conduct. This Court is reluctant to second-guess City officials on use of PLAs. However, when a claim of illegality is raised, if the City has established a process for assessing when a PLA should be used, as it has here, this Court must evaluate that process to determine that it is fair and not arbitrary.
After thorough review of the record before me, I am persuaded that the City’s decision to require a PLA as a condition for work in this case is an arbitrary one. First, no Project Labor Committee assessment of the need for a PLA on this Project occurred before the City’s initial bid advertisement on December 8, 1997, and the City offers no explanation for that significant omission. The Committee was convened to address the advisability of the PLA for this Project only after the plaintiffs challenged the legality of the PLA requirement by filing their earlier lawsuit.
Second, the City is applying the PLA requirement in an arbitrary and capricious manner. The City required a PLA for South Boston High School construction contracts. That project is less than one quarter of the cost of this Project and of a much shorter expected duration. But the City removed the PLA requirement from the Hyde Park High School Project, which is of the same approximate cost and magnitude as this Project and also concerns accreditation issues.
Third, on the record before me, the City has not met the standards set forth in its own Executive Order: namely, a determination by its PLA Committee based on “thorough investigation and analysis” that the use of a project labor agreement would “benefit and enhance the interests of the City.” Nowhere does the record indicate that the Project Labor Committee members conducted any research, heard any testimony, evaluated any reports, or provided any specific reasons for their vote in favor of the PLA requirement. While Paul Roche of the City’s Public Facilities Department was present at the January 26 PLA Committee meeting, no evidence suggests he made any presentation regarding the reasons for requiring a PLA on this Project. Before the meeting, the Committee members had been provided a single document, entitled “Construction Project Information Sheet.” Examination of the Information Sheet reveals that its recital of the length of the Project is excessive, and its statement that the State Board of Education requires the renovation work to be performed to “relieve [East Boston High School] of certain accreditation issues" is misleading.
From the present record, it is impossible to determine that the Committee’s decision was reached after due consideration of the factors set forth in the Executive Order as warranting a PLA. The January 26 meeting lasted less than an hour and considered 11 projects besides this one. The record is devoid of specific projections of cost savings on this Project from the use of a PLA or concerns of labor unrest. By contrast, before deciding to adopt a PLA for the four-year project to improve the Tappan Zee Bridge in New York, the Thruway Authority hired a consultant to prepare a comprehensive report of estimated cost savings. Cost savings were ultimately projected at $6 million. In addition, the Tappan Zee Bridge had previously been the target of labor unrest that required police intervention. See New York State Chapter, Inc. v. New York State Thruway Auth., 88 N.Y. 2d 56, 69, 666 N.E.2d 185, 190 (1996). See also the New York Goshen County courthouse case, where before the PLA was adopted as a bid condition, the awarding authority had before it a consultant’s report focused on the public fisc, had considered local labor history and showed how the PLA met the specific needs and timetable of the construction project at issue. See Albany Specialties, Inc. v. County of Orange, 662 N.Y.S. 2d 773 (1997) (court finds that these factors, coupled with absence in the PLA of provisions which discriminate against nonunion contractors, demonstrated that adoption of the PLA furthered the goals of New York’s competitive bidding statutes).
For these reasons, I conclude that the plaintiffs have shown a reasonable likelihood of success on their claim that the actions of the City in imposing the PLA in this Project were arbitrary and capricious. See, e.g., Rose v. Board of Selectmen of Falmouth, 36 Mass.App.Ct. 34, 43-44 (1994) (Ireland, J., dissenting).
I turn now to the public-interest prong of the standard for a preliminary injunction. All parties agree that the competitive bidding statute at issue here, G.L.c. 149, §§44A-44J and 44M, reflects the important public policies of promoting equitable competition in the bid process for public works projects and labor harmony for completing projects. See Modern Continental Constr. Co. v. Lowell, 391 Mass. 829, 840 (1984); Phipps Products Corp. v. Massachusetts Bay Transp. Auth., 387 Mass. 687, 691-92 (1982); Interstate Engineering Corp. v. Fitchburg, 367 Mass. 751, 757-58 (1975).
The City has a strong public interest in East Boston High School maintaining its accreditation. Arguably, the PLA would help ensure that the Project was completed on time and in an orderly fashion.[9] On the record before me, however, the Project goes much *330 farther in its renovations than is necessary to maintain accreditation. Also, the record makes clear that the City has known of the accreditation problems at least since 1995, and that the City delayed in bidding this Project, including waiting until after the Hyde Park project. Thus, I cannot find on this record that the public interest warrants a PLA for factors of timeliness.
The City also argues that the use of a PLA will ensure that the Project is completed in timely fashion because of the “no strike” provision in the PLA. This argument has appeal, but to say that a PLA is justified merely by a desire for labor stability so work will be completed on time is tantamount to wholesale approval of PLAs — every public entity wants its projects completed on time, and public projects are presumptively important to the public.
Balanced against the City’s interest in retaining the PLA as a bid specification is the public interest in fair competition in the bidding process. It is self-evident that the restrictions in the PLA impose a greater burden on non-unionized contractors than on those who are unionized.
The intervening Union and the City argue that I should deny plaintiffs’ application for a preliminary injunction on the ground that the PLA requirement advances the cost-saving purpose of G.L.c. 149, §44A et seq., and serves the public interest by guaranteeing labor harmony. This is certainly true in the theoretical, perhaps tautological sense that by requiring signatory unions to agree to a “no-strike” provision, the PLA arguably reduces the likelihood that employees of such unions will go on strike. However, I note that §44A itself contains a “labor harmony” clause, which requires a contractor to certify, in order to be “eligible” to bid, that its workers can work in harmony with other labor entities. Thus, even in the absence of a PLA, the City will obtain — and the public will benefit from — an ostensible guarantee that workers will refrain from disruptive labor practices.
In addition, there is no evidence in the record before me of labor unrest on the part of any of the non-unionized plaintiffs or on the part of anyone associated with’ this Project. This, too, leads me to question the extent to which costs would be cut and the public interest served by imposition of the PLA requirement.
After weighing the various interests, I find and rule that on the present record the balance of public interests favors the plaintiffs, and thus the public interest is best protected by issuance of the injunction. Therefore, I rule that the irreparable harm which would result to the plaintiffs without the injunction, coupled with their likelihood of success on the merits, outweigh any harm to the City.
ORDER
For the foregoing reasons, the plaintiffs’ motion for a preliminary injunction is ALLOWED. It is hereby ordered that the defendant City of Boston is enjoined from requiring as a bid specification that contractors enter into a Project Labor Agreement as a condition for work on the renovation of East Boston High School.

A project labor agreement is generally defined as a prebid contract between a construction project owner and a labor union (or several unions) establishing the union as the collective bargaining representative for all individuals who perform work on a construction project.

I make these findings based on the record before me. I invited the parties to offer live testimony, but no party wished to do so.

At the March '25 hearing, counsel for the Building and Construction Trades Council of the Metropolitan District, AFL-CIO (“the Council”) sought permission to be heard, which I granted. A formal motion to intervene was filed by the Council on March 27. On March 30, the Court allowed the Council’s motion to intervene as a party defendant. The Court also allowed the Commonwealth to appear as amicus curiae. The Intervenor has raised such issues as the need to convene a three-judge court under G.L.c. 212, §30, preemption under fhe National Labor Relations Act and applicability of the Anti-Injunction Act, G.L.c. 214, §6. Given the time constraints in issuing this decision and the fact that the parties have neither briefed nor argued these issues, I do not address them in this Memorandum except to rule that this is not the kind of “labor dispute” which requires a three-judge court.

See supplemental affidavit of Joseph W. Nigro, Jr., dated March 27, 1998.

The Commonwealth is expected to bear 90 percent of the cost of the Project.

Currently pending before the Appeals Court is John T. Callahan & Sons, Inc. v. City of Malden, No. 98-P-000182. In that case, the plaintiffs appeal from the Superior Court’s denial of a preliminary injunction.

In UCANE, Judge Garsh addressed, among other issues, whether a public awarding authority had the authority under the Massachusetts public bidding statutes to require parties to enter into a project labor agreement as a bid specification. Civil Action No. 90-3035 at 12-16, 27-32. Judge Garsh determined that the Massachusetts public bidding statute governing the defendant, G.L.c. 30, §39M, granted the defendant the discretion to require parties to enter into project labor agreements. Id. at 15. The court reasoned that implicit in G.L.c. 30, §39M’s grant of authority to the defendant to accept and reject bids, and in its provision of policy directives for the defendant to follow, was the power to choose its means for doing so. Id. at 14-15. Since the policy directives of the statute are to promote the public interest and labor harmony, the Court ruled that it was reasonable for an awarding authority to require parties working on a project to enter into a project labor agreement. Id. at 14-15. Although the statute at issue in UCANE was G.L.c. 30, §39M, the statute in this case is similar, and, as the court recognized in UCANE, the same principles apply. See id. at 13 n.4.

See Empire State Chapter of Assoc. Builders & Contractors, Inc. v. Oswego, 659 N.Y.S.2d 672 (N.Y. App. Div. 1997) (concluding that absent history of labor unrest, “general concernís] that the project be completed in a timely manner" do not justify the use of a PLA).